# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TERRY LARSON,

      Plaintiff,

                          Case No. 2:20-cv-4997
v.                              Judge Edmund A. Sargus, Jr.
                             Magistrate Judge Chelsey M. Vascura

LASHANN EPPINGER, *et al.,*

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of a Report and Recommendation issued by the Magistrate Judge on November 2, 2020 (ECF No. 4) and Plaintiff's Motion for United States Marshals to Serve Summons and Complaint (ECF No. 3.) Plaintiff Terry Larson, an Ohio inmate proceeding without the assistance of counsel, timely filed objections to the Report and Recommendation. (ECF No. 5.) For the following reasons, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Plaintiff's objections to the Report and Recommendation.

## I.

Plaintiff Terry Larson is currently a state prisoner at Grafton Correctional Institution ("GCI") in Lorrain County, Ohio. (Compl. ¶ 15, ECF No. 1.) All events giving rise to Plaintiff's claims occurred at GCI. (*Id.*)

Plaintiff was diagnosed with colorectal cancer in 2007 for which he underwent invasive surgery. (*Id.* ¶¶ 18–19.) As a result of his colorectal cancer, Plaintiff began experiencing uncontrollable bowel movements and underwent several more medical procedures from 2010 to 2015. (*Id.* ¶ 22.) According to Plaintiff, his colorectal cancer complications limit his ability to

1

control relieving himself like the average person. (*Id.* ¶¶ 37, 42.) Plaintiff claims that, since 2008, he has experienced "12, 15, or 20 plus daily" bowel movements requiring immediate access to a toilet for diarrhea, bloody stool, and other problems. (*Id.* ¶¶ 43–45.) To mitigate the frequency of his bowel movements and the need for access to a toilet, Plaintiff does not eat breakfast or lunch on the days he works and sometimes skips meals to accommodate his cellmate's schedule so that his cellmate can use the toilet. (*Id.* ¶ 44.) Plaintiff also must actively manage his pain and clean up after each bowel movement using items purchased from the commissary. (*Id.* ¶ 45.)

In 2008, Plaintiff submitted an ADA reasonable accommodation request for a single-man cell due to his frequent bowel movements resulting in problems with cellmates over using the cell's shared toilet. (*Id.* ¶ 24.) Plaintiff's request was initially denied based on grounds that Plaintiff's condition was "medical" and "not ADA." (*Id.* ¶ 25.) However, Plaintiff successfully appealed, and the ADA Coordinator for the Ohio Department of Rehabilitation Correction and the Special Needs Assessment Committee recommended that Plaintiff be placed into a single-man cell where he would have access to his own toilet as needed. (*Id.* ¶ 28.)

Plaintiff was provided the single-man cell accommodation from 2008 to 2018. In 2018, Defendant David Hannah, the prison's Health Care Administrator, told Plaintiff that GCI's ADA Committee (consisting of Defendants Lashann Eppinger, Janice Douglas, and Vanessa Shepherd) discontinued his single-man cell accommodation because it was not medically necessary. (*Id.* ¶¶ 56–61.) Plaintiff protested and requested that his single-man cell accommodation be reinstated. (*Id.* ¶¶ 56–84.) Defendant Eppinger, the warden of GCI, informed Plaintiff that the ADA committee determined that a single-man cell was not medically necessary, but that Plaintiff would have access to the handicapped bathroom within his unit. (*Id.* ¶ 84.)

In January 2019, Plaintiff was instructed to fill out a New Inmate Reasonable

2

Accommodation Request if he wished to continue receiving his single-man cell accommodation. (*Id.* ¶¶ 103–04.) However, Plaintiff felt that filling out this form would be procedurally inappropriate, because he was not requesting a new accommodation, but a continuation of an existing accommodation, and that it would be "a frivolous procedure because of the predetermined notion it will be denied." (*Id.* ¶¶ 95, 103.) Defendant Hannah explained to Plaintiff that filling out the form was necessary so that if Plaintiff received an unfavorable decision, it could be appealed. (*Id.*) Plaintiff eventually filed a New Inmate Reasonable Accommodation Request on the advice of his attorney. (*Id.* ¶ 120.)

On July 19, 2019, Plaintiff's accommodation request was approved, but only for continued access to the handicapped restroom. (*Id.* ¶ 125.) Plaintiff appealed this decision, and on December 2, 2019, his appeal was denied. (*Id.*, Appendix at 2.) Defendant Stanforth, an Assistant Chief Medical Inspector at GCI, informed Plaintiff "there are special correctional facilities for offenders who cannot function within the general population due to bladder and bowel issues" and that, at the time he saw his doctor in 2018, Plaintiff was not "identified as having a need for an institution with special ADA accommodations." (*Id.*)

Plaintiff now shares a cell with another inmate, which has a toilet. (*Id.* ¶¶ 126–135.) Plaintiff also has access to the handicapped bathroom as an accommodation. (*Id.*) Plaintiff alleges that still suffers from the same bowel complications as he did from 2008 to 2018 when he was provided the ADA single-man cell accommodation. (*Id.* ¶ 126.) He claims that a shared cell with access to the handicapped restroom does not accommodate his need for frequent access to a toilet due to his bowel movements. (*Id.* ¶ 126; Pl.'s Obj. at 8.) According to Plaintiff, the handicapped restroom is often times unavailable when needed. (Compl. ¶ 137.) Sometimes, it remains locked and Plaintiff must wait 20 minutes for the guards to unlock it; other times, Plaintiff must go hours

without access to the handicapped restroom when it is occupied by another inmate with a disability because the restroom is single-use and doubles as a shower. (*Id.*; Pl.'s Obj. at 8.)

On September 23, 2020, Plaintiff commenced this action asserting claims for violation of the First, Eighth, and Fourteenth Amendments, the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and the Rehabilitation Act, 29 U.S.C. § 794(a) ("RA"). (Compl.) Plaintiff seeks declaratory and injunctive relief as well as attorney's fees and costs. (*Id.* ¶¶ 173–89.) The Magistrate Judge, pursuant to an initial screen of the Complaint under 28 U.S.C. § 1915A, recommended dismissal of all claims for failure to state a claim. (ECF No. 4, Report and Recommendation.) Plaintiff timely objected. (ECF No. 5, Pl.'s Obj.)

## II.

The district court reviews objections to a report and recommendation de novo. 28 U.S.C. § 636(b)(1). Objections to a report and recommendation "must be clear enough to enable to the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Secretary of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

The Prison Litigation Reform Act requires the Court to dismiss any portion of the complaint *sua sponte* "that (1) fails to state a claim upon which relief can be granted, or (2) is frivolous." *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010); 28 U.S.C. § 1915A(b)(1). The Court must also dismiss any portion of the Complaint that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(A)(b)(2). In determining whether the complaint fails to state a claim upon which relief can be granted under § 1915A, courts apply the same standard used for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must satisfy the

basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Court holds pro se complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Also, "[liberal] construction of pro se complaints can include additional allegations set forth in objections to the Magistrate Judge's R&R at the discretion of the district court." *Id.*

## III.

Plaintiff asserts constitutional claims under the First, Eighth, and Fourteenth Amendments. Plaintiff also asserts claims under Title II of the ADA and the Rehabilitation Act. The Magistrate Judge recommended that the Court dismiss each of Plaintiff's claims under § 1915(A)(b)(1) for failure to state a claim. Plaintiff objects to those recommendations. (Pl.'s Obj.) Plaintiff also requests leave to amend his Complaint under Rule 15 of the Federal Rules of Civil Procedure if

his objections are overruled. (*Id.* at 2.) After reviewing Plaintiff's objections de novo, the Court agrees with the Magistrate Judge's recommendations on Plaintiff's constitutional claims, but respectfully disagrees on Plaintiff's ADA and RA claims.

## A. Claims under the First, Eighth, and Fourteenth Amendments

### 1. Plaintiff's Objections

Plaintiff objects to the Magistrate Judge's recommendations that the Court dismiss his (1) First Amendment claim for lack of access to courts, (2) First Amendment retaliation claim, (3) Eighth Amendment claim for deliberate indifference to serious medical needs, and (4) Fourteenth Amendment Claim due process claim for termination of his single-man cell assignment. (Pl.'s Obj at 2–6.) Plaintiff's objections mostly restate the Complaint's detailed allegations. (*See id.*)

After a de novo review and consideration of Plaintiff's objections, the Court agrees with the Report and Recommendation's reasoning and **ADOPTS** the recommendations on Plaintiff's constitutional claims. (Report and Recommendation at 5–10.) For the reasons stated in the Report and Recommendation, Plaintiff has failed to state a claim upon which relief can be granted under the First, Eighth, and Fourteenth Amendments. Accordingly, the Court **OVERRULES** Plaintiff's objections as to his constitutional claims.

### 2. Plaintiff's Request to Amend the Complaint

Plaintiff asks that he be permitted to "restate his claims" in an amendment to the Complaint if the Court overrules his objections. (Pl.'s Obj. at 2.) Rule 15(a)(2) states that a district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Case law in the Sixth Circuit "manifests liberality in allowing amendments to a complaint." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (quoting *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015)) (internal quotations omitted). "Under Rule 15(a) a district court can allow a

plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). Generally, "[i]f it is at all possible that the party . . . can . . . state a claim for relief, the court should dismiss with leave to amend." *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019). However, "where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment." *Hugueley v. Parker*, No. 3:19-CV-00598, 2020 WL 434254, at *1 (M.D. Tenn. Jan. 28, 2020) (citing *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993)).

Here, any amendment to Plaintiff's constitutional claims would still fail to state a claim for relief. The Complaint provides detailed allegations in support of Plaintiff's constitutional claims, which Plaintiff reiterates in his objections. However, these allegations, taken as true, fail to state a claim. Plaintiff's objections provide no indication that his proposed amendment will include additional allegations to sufficiently state a claim under the First, Eighth, or Fourteenth Amendments. There is also no procedural defect for Plaintiff to remedy by amending the Complaint that would allow his constitutional claims to survive a motion to dismiss. Permitting an amendment would therefore be futile. Thus, the Court denies Plaintiff's request for leave to amend.

**B. Claims under the ADA and RA**

Plaintiff claims that Defendants are not providing him with a reasonable accommodation for his disability, in violation of Title II of the ADA and Section 504 of the RA. The gist of Plaintiff's claim is that his current accommodation, access to the handicapped restroom within his unit, is ineffective.

The ADA and the RA apply to state prisoners. *Key v. Grayson*, 179 F.3d 996, 997 (6th Cir. 1999) (citing *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212–23 (199)). Title

II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .." 29 U.S.C. § 794(a).

The Magistrate Judge held that Plaintiff failed to state a claim because a single-man cell is not a "service, program, or activity" under Title II of the ADA. The Magistrate Judge also relied on caselaw holding that neither the ADA nor the RA provide a cause of action for inadequate medical care. *See Simmons v. Navajo Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . .. The ADA does not create a remedy for medical malpractice.").

Plaintiff objects, arguing that his claim is premised on the denial of "access to bathroom facilities"—which does constitute a service, program, or activity under Title II. (Pl.'s Obj. at 7.) Furthermore, Plaintiff argues that his ADA claim is not a cause of action for inadequate medical care; instead, "it is a cause of action for not providing a reasonable accommodation" on grounds that his current accommodation for his inability to control his bowel movements "amounts to no accommodation at all." (*Id.*) In other words, Plaintiff argues that the Complaint sufficiently states a claim for failure to provide a reasonable accommodation.

Plaintiff's objections raise the issue of whether Plaintiff has sufficiently stated a claim for

8

failure to provide a reasonable accommodation under Title II of the ADA. To address this issue, the Court must answer two questions: first, whether failure-to-accommodate claims are distinct from intentional discrimination claims under Title II; and second, if so, whether Plaintiff has sufficiently stated a claim for failure to accommodate his disability. The answer to both questions is yes.

### 1. Are failure-to-accommodate claims distinct from intentional discrimination claims under Title II of the ADA?

Most ADA cases arise under Title I, which prohibits disability discrimination in employment. *E.F. by Fry v. Napoleon Cmty. Sch.*, No. 12-15507, 2019 WL 4670738, at *9 (E.D. Mich. Sept. 25, 2019) (citing *McPherson v. Mich. High Sch. Athl. Ass'n Inc.*, 119 F.3d 453, 460 (6th Cir. 1997)). Title I permits a Plaintiff to bring a claim for failure to provide a reasonable accommodation distinct from a claim of intentional discrimination. *Id.* at *9 n.4. However, unlike Title I (and Title III) of the ADA, Title II "does not contain a specific accommodation requirement" in the statute. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006) (en banc).

Three circuits, relying on the ADA regulations promulgated by the Department of Justice, have explicitly held that Title II permits independent claims for failure to reasonably accommodate. *See Wisconsin Cmty. Servs., Inc.*, 465 F.3d at 753 ("We think that the regulation makes clear that the duty to accommodate is an independent basis of liability under the ADA."); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 276–77 (2d Cir. 2003) ("[W]e hold that a claim of discrimination based on a failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact" under Title II); *Muhammad v. Ct. of Common Pleas of Allegheny Cty., Pa.*, 483 F. App'x 759, 763 (3d Cir. 2012) (citing *Wisconsin Cmty. Servs., Inc.*, 465 F.3d at 751) ("A plaintiff can assert a failure to accommodate as an independent basis for

liability under [Title II] of the ADA and RA.").

The Sixth Circuit "has not explicitly decided whether a reasonable-accommodation claim under Title II is a viable claim separate from a disparate-treatment or disparate-impact type claim." *Everson v. Leis*, 412 F. App'x 771, 784 n.6 (6th Cir. 2011) (Moore, J., dissenting). But, "at least two Sixth Circuit cases appear to indicate that a failure-to-accommodate claim can be asserted as a separate and distinct claim from an intentional discrimination claim" under Title II. *E.F. by Fry*, 2019 WL 4670738, at *10. In 2004, the Sixth Circuit explained that "Title II mandates not only that public entities refrain from intentionally discriminating against disabled individuals but that they also make certain accommodations to the disabled in the course of providing public services . . .." *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004) (citing *Tennessee v. Lane*, 541 U.S. 509, 537 (2004) (Ginsburg, J., concurring)).

More recently, the Sixth Circuit implicitly acknowledged that Title II recognizes distinct claims for "reasonable modifications" and intentional discrimination. *Anderson v. City of Blue Ash*, 798 F.3d 338, 353–56 (6th Cir. 2015). At issue in that case was whether the plaintiff could keep a miniature horse at home as a service animal for her disabled minor daughter. *Id.* at 346. The plaintiff argued that the ADA and its implementing regulations required the city to make "reasonable modifications" to its "'policies, practices, and procedures' to permit her to keep" the miniature horse at her home. *Id.* at 353. The plaintiff also argued that the city intentionally discriminated against her and her daughter. *Id.* at 356. The court analyzed the two claims separately. *Id.* at 353–56. The court concluded that the plaintiff failed to establish a prima facie case of intentional discrimination, but that genuine issues of fact precluded summary judgment on the plaintiff's "reasonable modification" claim. *Id.*

Thus, *Anderson* signified that a plaintiff in the Sixth Circuit can maintain a "reasonable

modification" claim under Title II independent from a claim of intentional discrimination. *See id.*; *see also E.F. by Fry*, 2019 WL 4670738, at *10 (citing *Anderson* and analyzing the plaintiff's Title II claims for intentional discrimination and failure-to-accommodate separately).

### 2. Has Plaintiff sufficiently stated a claim for failure to accommodate?

#### a. Elements of Reasonable Modification Claim

Title II requires the plaintiff to show that: (1) he has a disability; (2) he is a "qualified individual"; and (3) he was "being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of" his disability. *Anderson*, 798 F.3d at 357 (citing 42 U.S.C. § 12132).[1]

Relevant here, 28 C.F.R. § 35.130(b)(7)(i) requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." Thus, to state a claim for failure-to-accommodate under Title II, the plaintiff can allege facts to show that he was "excluded from participation in, denied the benefits of, or subjected to discrimination because of" a disability due to the public entity's failure to make a "reasonable modification" pursuant to the regulation.[2] 28 C.F.R. § 35.130(b)(7)(i); *see also Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) ("A qualified individual can base a discrimination claim [under Title II] on any

---

[1] The analysis here also applies to Plaintiff's claim under Section 504 of the RA. *See McBride v. Michigan Dep't of Corr.*, 294 F. Supp. 3d 695, 704 (E.D. Mich. 2018). Similar to Title II of the ADA, the RA does not "expressly require accommodation," but "the Supreme Court has located a duty to accommodate in the statute generally." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (citing *Wis. Cmty. Serv.*, 465 F.3d at 747 and *Alexander v. Choate*, 469 U.S. 287, 300–01 (1985)).

[2] The modification must be "necessary to avoid discrimination on the basis of disability[.]" 28 C.F.R. § 35.130(b)(7)(i). In the Seventh Circuit, the element is satisfied if the "plaintiff shows that, 'but for' his disability, he would have been able to access the services or benefits desired." *Wisconsin Cmty. Servs., Inc.*, 465 F.3d at 754. While the Sixth Circuit has not addressed this specific issue, the Sixth Circuit also applies a but-for causation standard in Title II ADA cases generally. *Anderson*, 798 F.3d at 357 n.1.

of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'"); *see also Wisconsin Cmty. Servs., Inc.*, 465 F.3d at 753 ("[A] Title II claim under the ADA 'may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.'").[3]

Importantly, at the pleading stage, a pro se plaintiff's complaint need only allege "sufficient facts, accepted as true and construed liberally, to state a claim under the ADA[.]" *Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 WL 5432041, at *2 (6th Cir. Oct. 3, 2019). The plaintiff need not allege facts establishing a prima facie case at the pleading stage. *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002) (In *Swierkiewicz*, the Supreme Court held that a plaintiff in a Title VII case need not plead a prima facie case because the *McDonnell Douglas* burden-shifting framework is an evidentiary standard, not a pleading standard)).

### b. Application

Construing the pro se Complaint and Plaintiff's objections liberally, Plaintiff has sufficiently stated a claim for failure to provide a "reasonable modification" under Title II and 28

---

[3] As one court put it, the "refusal to provide a 'reasonable accommodation' is simply one of the ways the entity can discriminate." *Burley v. Quiroga*, No. 16-CV-10712, 2019 WL 4316499, at *4 (E.D. Mich. June 6, 2019), *report and recommendation adopted*, No. 16-CV-10712, 2019 WL 3334810 (E.D. Mich. July 25, 2019). The court in *Burley* concluded that the "Second Circuit's approach likely reflects what the Sixth Circuit would do if presented with this issue—acknowledge the distinction between the [intentional discrimination and failure-to-accommodate] frameworks but find the required elements to be similar, if not identical." *Id.* *Burley* also cited *Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008) for the proposition that, even in a Title II reasonable accommodation case, a plaintiff "must show that the discrimination was *intentionally* directed toward him or her in particular." *Id.* (emphasis in original). It is unclear whether the court in *Burley* used the phrase "intentional" to mean purposeful discrimination. But under *Anderson*, it's clear that a plaintiff need not show purposeful discrimination when making a failure-to-accommodate claim under Title II. *See Anderson*, 798 F.3d at 353–60; *see also Muhammad v. Ct. of Common Pleas of Allegheny Cty., Pa.*, 483 F. App'x 759, 764 (3d Cir. 2012) ("A failure-to-accommodate claim differs from other ADA claims in that the ADA does not require a failure-to-accommodate plaintiff to show that his injury was the result of purposeful discrimination.")

C.F.R. § 35.130(b)(7)(i).

First, Plaintiff has pleaded that he is disabled within the meaning of the ADA. Relevant here, "disability" means a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). As a result of complications from colorectal cancer, Plaintiff now experiences "12, 15, or 20 plus daily" uncontrollable bowel movements requiring immediate access to a toilet for diarrhea and bloody stool. (Compl. ¶ 43–45.) Plaintiff skips meals during work days to avoid the need to frequently use the toilet and also skips meals to accommodate his cellmate's use the cell's shared toilet. (*Id.* ¶ 44.) Indeed, GCI's ADA Committee recognizes that Plaintiff has a disability that needs at least some accommodation. (*Id.* ¶ 84.) Therefore, taking the allegations in the Complaint as true, Plaintiff has a "physical . . . impairment that substantial limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

Second, a reasonable inference can be made from the pleadings that Plaintiff is a "qualified individual" under Title II. A "qualified individual" means "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The phrase "'services, programs, or activities' encompasses virtually everything a public entity does." *Anderson*, 798 F.3d at 356.

In this case, the bathrooms provided by the state prison where Plaintiff is incarcerated constitute "services, programs, or activities provided by a public entity." (Compl. ¶ 130.) As the Third Circuit explained, "corrections systems are unique facilities under Title II because inmates cannot leave, and thus prisons must address the needs of inmates with disabilities by providing 'accessible toilet and shower facilities, devices such as a bed transfer or a shower chair, and assistance with hygiene methods for prisoners with physical disabilities.'" *Furgess v. Pennsylvania*

*Dep't of Corr.*, 933 F.3d 285, 290 (3d Cir. 2019) (citing 28 C.F.R. pt. 35, App. A, at 663 (2017)) (holding that a state prison's provision of accessible showers is a service, program, or activity under Title II); *see also Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010) ("the fundamentals of life, such as sustenance, the use of toilet and bathing facilities" are the "benefits" of "services or programs" provided to state prison inmates); *United States v. Georgia*, 546 U.S. 151, 157 (2006) (stating that prison officials' refusal to accommodate an inmate's "disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs [plausibly] constituted 'exclusion from participation in or . . . denial of the benefits of' the prison's 'services, programs, or activities.'") (Scalia, J.) (alterations omitted).

Third, Plaintiff has sufficiently alleged that he was denied a modification the prison once deemed necessary. Prison officials had knowledge of Plaintiff's impairments and provided Plaintiff with a single-man cell accommodation from 2008 to 2018. After GCI revoked Plaintiff's single-man cell accommodation, Plaintiff was put into a cell with a cellmate and given access to the handicapped bathroom within his unit as an alternative accommodation. (*Id.* ¶ 84.) But, taking Plaintiff's allegations as true, the handicapped restroom is not readily available for Plaintiff to relieve himself when experiencing uncontrollable bowel movements. (Compl. ¶ 137; Pl.'s Obj. at 8.) The crux of Plaintiff's ADA and RA claims is that GCI provided him with a disability accommodation for 10 years, that it now provides him with a different accommodation, and that the different accommodation is ineffective because he cannot access a toilet when needed—the very purpose of providing Plaintiff an accommodation. *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) ("An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations.") (emphasis in original).

While it's true that the ADA "does not create a remedy for medical malpractice[,]" *Bryant*

*v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996), this case does not involve "allegations of medical malpractice or disagreements about medical treatment." *Furgess*, 933 F.3d at 291. Furthermore, simply because the "denial of a disability accommodation" involves "medical judgment" does not make the decision an "unreviewable medical determination" under the ADA. *Munoz v. California Dep't of Corr. & Rehab.*, 842 F. App'x 59 (9th Cir. 2021); *cf. Watson v. Mohr*, No. 2:17-CV-457, 2017 WL 6383812, at *1 (S.D. Ohio Dec. 14, 2017), *report and recommendation adopted*, No. 2:17-CV-457, 2018 WL 836484 (S.D. Ohio Feb. 13, 2018) (recommending dismissal of inmate's ADA and Eight Amendment claims where inmate claimed that the prison "refused to treat him with the antiviral medication Harvoni, which is allegedly both available and able to cure his Hepatitis C"); *Johnson v. Papendick*, No. 14-CV-14630, 2015 WL 4771381, at *8 (E.D. Mich. June 4, 2015), *report and recommendation adopted*, No. 14-14630, 2015 WL 4771340 (E.D. Mich. Aug. 13, 2015) (recommending dismissal of inmate's ADA claim where inmate claimed the prison failed "to have Plaintiff physically evaluated for a lung transplant, fail[ed] to place Plaintiff on the lung transplant list, and fail[ed] to provide Plaintiff with appropriate medical treatment.")

Plaintiff sufficiently states a plausible claim for failure to provide a "reasonable modification" under Title II of the ADA and the RA. The Court therefore **SUSTAINS** Plaintiff's objections to the Report and Recommendation as to his ADA and RA claims.

### C. Proper Defendants

Plaintiff asserts his claims against Defendants in their individual and official capacities. (Compl. ¶¶ 2–13.) "The proper defendant under a Title II claim is the public entity or an official acting in his official capacity." *Mitchell v. Horton*, No. 2:18-CV-216, 2019 WL 1025562, at *5 (W.D. Mich. Mar. 4, 2019) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Title II of the ADA does not provide a private right of action against a public employee

acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009).

In this case, Plaintiff seeks declaratory relief, prospective injunctive relief, and litigation costs. Suing a state defendant in his or her official capacity raises the specter of sovereign immunity under the Eleventh Amendment. *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010). In *United States v. Georgia*, the Supreme Court held that Title II of the ADA abrogates sovereign immunity against States in private suits for damages under Title II when the State's conduct also violates the Fourteenth Amendment. 546 U.S. at 159. The Court left open whether Congress abrogated sovereign immunity for suits for damages when the State violated Title II but did not violate the Fourteenth Amendment. *Id.* The majority did not address whether Congress abrogated sovereign immunity in suits for prospective injunctive relief, but Justice Stevens noted in concurrence that the "state defendants have correctly chosen not to challenge the Eleventh Circuit's holding that Title II is constitutional insofar as it authorizes prospective injunctive relief against the State." *Id.* at 160 (Stevens, J., concurring). Therefore, it seems "clear that claims under the Title II of the ADA for injunctive relief may proceed against the" State. *Meeks v. Schofield*, No. 3:12-MC-00035, 2012 WL 1934416, at *3 (M.D. Tenn. May 29, 2012). Similarly, "States waive sovereign immunity [under] the RA when they accept federal funds." *Id.* (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002)). At this stage, the Court declines to address whether Plaintiff may also recover litigation costs.

Accordingly, Plaintiff's ADA and RA claims may proceed against Defendants in their official capacities, except as to Defendant David Hannah. The Complaint alleges that Defendant David Hannah is no longer employed by the State. (Compl. ¶ 6.) Thus, Plaintiff cannot maintain an official capacity suit for prospective relief against Defendant Hannah. Defendant Hannah will

be dismissed from this action.

**IV.**

Plaintiff also moves under Federal Rule of Civil Procedure 4(c)(3) for an order that service be made by the United States Marshals Service. (ECF No. 3.) The rule provides that the "court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915. Fed. R. Civ. P. 4(c)(3). Plaintiff has not been authorized to proceed in forma pauperis. He submits that he was able to cover the filing fee for this action, but that he would not be able to cover the costs to effect service of process on Defendants. (ECF No. 3.) Accordingly, the Court finds it appropriate to order the United States Marshals Service to effectuate service of process on Defendants pursuant to Fed. R. Civ. P. 4(c)(3).

**V.**

For the foregoing reasons, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** Plaintiff's objections to the Report and Recommendation. (ECF No. 5.) The Court **ADOPTS IN PART** the Report and Recommendation as to Plaintiff's constitutional claims. (ECF No. 4.) Plaintiffs claims under the First, Eighth, and Fourteenth Amendments are **DISMISSED**. Plaintiff's ADA and RA claims against Defendant Hannah are **DISMISSED**. Defendant Hannah is dismissed from this action. Plaintiffs ADA and RA claims against the remaining Defendants in their individual capacities are **DISMISSED**.

Furthermore, the Court **GRANTS** Plaintiff's Motion for United States Marshals Service to Serve Summons. (ECF No. 3.) The Court **ORDERS** the United States Marshals Service to serve summons and a copy of the Complaint (ECF No. 1) on Defendants Lashann Eppinger, Keith J. Foley, David Less, Janice Douglas, Vanessa Shepherd, Andrew Eddy, Roger Wilson, and Karen Stanforth. The Clerk is **DIRECTED** to send a copy of this Opinion and Order to the United States

Marshals Service. This case is to remain open.

**IT IS SO ORDERED.**

6/29/2021
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**