

IN THE UNITED STATES DISTRICT COURT

Southern District of Ohio

Eastern Division

| | | |
|---|---|---|
| Terry L. Larson, | ✻ | |
| | ✻ | |
| Plaintiff, | ✻ | Case No. 2:20-cv-04997 |
| | ✻ | |
| | ✻ | Magistrate Judge |
| -vs- | ✻ | Chelsey M. Vascura |
| | ✻ | |
| | ✻ | Judge: Edmund A. Sargus |
| Keith J. Foley, | ✻ | |
| M. O'Callahan, | ✻ | AMENDED COMPLAINT |
| Janice Douglas, | ✻ | |
| Jennifer Barry, | ✻ | |
| Kai Adams, | ✻ | |
| Anderew Eddy, | ✻ | |
| Roger Wilson, | ✻ | |
| Karen Stanforth, | ✻ | |
| | ✻ | |
| Defendants. | ✻ | |

Now comes the Plaintiff, Terry L. Larson with amended complaint per document number 20, scheduling order by Magistrate Chelsey M. Vascura.

Defendant's M. O'Callahan and Kai Adams have beed added. Defendant's LaShann Eppinger, David Hannah, David Less, Vanessa Shepherd and G. Zielinski have been terminated.

All Constitutional claims have been removed and the Americans with Disabilty Act and Section 504 of the Rehabilitation Act of 1973 remain the same with the exception of the new defendants M. O'Callahan and Kai Adams along with the denying the request and appeal process involing Defendant's Keith Foley, Roger Wilson, Karen Stanforth and Dr. Andrew Eddy.

I.    THE PARTIES TO THIS COMPLAINT

A.    The Plaintiff

1. Plaintiff Terry L. Larson #243147 has no alias, is in the custody and control of the Ohio Department of Rehabilitation and Correction (ODRC). Plaintiff is currently confined at the Grafton Correctional Institution (GCI) and under auspices the complained of actions giving rise to the claims of which this complaint is taken;

B.    The Defendants

Defendant No. 1.

2. Defendant Keith J. Foley is employed as warden of GCI and successor of LaShann Eppinger who was part of a newly created ADA committee during the time of the alleged actions and conduct committed at GCI, 2500 South Avon-Belden Road, Grafton, Ohio 44044. Defendant Keith J.Foley also participated directly in his official capacity in actions and conduct committed at GCI on and after December 22, 2021. Plaintiff is bringing this complaint against Defendant Foley in his official capacity;

Defendant No. 2

3. Defendant M. O'Callahan is employed at GCI as Health Care Administrator (HCA) who has succeeded G. Zielinski who succeeded David Less who succeeded David Hannah who was HCA at the time of the alleged actions and conduct at Grafton Correctional Institution, 2500 South Avon-Belden Road, Grafton, Ohio 44044. Plaintiff brings this complaint against Defendant M. O'Callahan in his official capacity;

Defendant No. 3

4. Defendant Janice Douglas is employed as Chief Medical Officer (CMO) and was a member of the ADA GCI committee during the time of the alleged actions and conduct committed at Grafton Correctional Institution, 2500 South Avon-Belden Road, Grafton, Ohio 44044. Plaintiff brings this complaint against Defendant Douglas in her official capacity;

Defendant No. 4

5. Defendant Jennifer Barry is employed as the Assistant ADA coordinator at Grafton Correctional Institution and has been directly involved with the alleged actions and conduct committed at GCI on and after September 9, 2021. Plaintiff brings this complaint against Defendant Jeniffer Barry in her official capacity;

-2-

Defendant No. 5

6. Defendant Kai Adams is employed as ADA Coordinator and the Institutional Inspector at Grafton Correctional Institution, 2500 South Avon-Belden Road 44044. Defendant Kai Adams has been directly involved since on or about September 9, 2021. Defendant Kai Adams succeeded Ms. Ware who succeeded Vanessa Shepherd who was a member of the GCI ADA Committee and GCI ADA coordinator during the alleged actions and conduct committed at Grafton Correctional Institution, 2500 South Avon-Belden Road, Grafton, Ohio 44044. Plaintiff is bringing this complaint against Defendant Kai Adams in his official capacity;

Defendant No. 6

7. Defendant Andrew Eddy is employed as the Director of the Ohio Department of Rehabilitation and Correction "Collegial Review Committee" at the Operations Support Center, 4545 Fisher Road, Suite D, Columbus, Ohio 43228. Plaintiff brings this complaint against Defendant Eddy in his official capacity;

Defendant No. 7

8. Defendant Roger Wilson is employed as the Ohio Department of Rehabilitation and Correction Chief Inspector, ADA coordinator for inmates and Chair, Special Needs Assessment Committee at the Operations Support Center, 4545 Fisher Road, Suite D, Columbus, Ohio 43228. Plaintiff brings this complaint against Defendant Wilson in his official capacity;

Defendant No. 8

9. Defendant Karen Stanforth is employed as the Ohio Department of Rehabilitation and Correction Assistant Inspector, Medical, at the Operations Support Center, 4545 Fisher Road, Suite D, Columbus Ohio 43228. Plaintiff brings this complaint against Defendant Stanforth in her offical capacity;


II.    BASIS FOR JURISDICTION

10. This court has original jurisdiction over the instant justiciable controversy by virtue of Article III of the United States Constitution. This suit is brought against state and local officials (42 USC § 1983 claims). The following federal statutory rights are being violated by state or local officials. Rights provided by both Title II of the Americans with Disability Act and Section 504 of the Rehabilitation Act of 1973, discrimination in right to enjoy protections of the ADA and RA by denying meaningful access, unreasonable and ineffective accommodations, and the use of unlawful and or unconstitutional state administrative policies;

VENUE

11. All the acts and conduct upon which the claims set forth in this complaint are based upon occured while plaintiff Larson was confined as a State of Ohio prisoner at GCI in Grafton, Lorain County, Ohio. Defendant's Andrew Eddy, Roger Wilson and Karen Stanforth are employed at central office located in Columbus, Ohio. Plaintiff has challenged state administrative codes, administrative regulations, state policies and protocols that Defendant's are responsible for within the territorial jurisdiction of this action, pursuant to Federal Rules of Civil Procedure, Rule 5;

12. Both Defendant Keith Foley and his predecessor LaShann Eppinger acted under color of state law, Ohio Administrative Code 5101:9-2-02 The Americans with Disability Act and State Policies 64-DCM-02 Inmates with Disabilities, 55-SPC-01 Assignment of Inmate to single occupancy room/cell. Defendant M. O'Callahans' predecessor David Hannah acted under color of state law, Ohio Administrative Code 5101:9-2-02, State Policies 55-SPC-01, 64-DCM-02, 68 MED-01 and Medical Protocol B-19. Defendant Douglas acted under color of state law, Ohio Administrative Code 5101:9-2-02, State Policies 55-SPC-01, 64-DMC-02, 68-MED-01 and Medical Protocol B-19. Defendant's Jeniffer Barry and Kai Adams along with Kai Adams predecessor Vanessa Shapherd acted under color of state law State Administrative Code 5101:9-2-02, State Policies 55-SPC-01, 64-DCM-02, 68 MED-01, Medical Protocol B-19 and State Admistrative Regulation 5120-9-31. Defendant Andrew Eddy acted under color of state law, Ohio Administrative Code 5101:9-2-02 State Policies 55 SPC-01, 64 DCM-01, 68 MED-01 and Medical Protocols B-1 and B-19. Defendant Roger Wilson acted under color of state law, Ohio Administrative Code 5101:9-2-02, State Administrative Regulation 5120:-9-31, State Policies 55-SPC-01, 64-DCM-02, 68MED-01, and Medical Protocol B-19. Defendant Karen Stanforth acted under color of state law, Ohio Administrative Code 5101:9-2-02, State Administrative Regulation 5120-9-31, State Policies 55-SPC-01, 64-DCM-02, 68 MED-01 and Medical Protocol B-19.

III.    PRISONER STATUS

13. Plaintiff Larson is a convicted and sentenced state prisoner, a United States citizen and citizen of the State of Ohio, who is under the custody of the Ohio Department of Rehabilitation and Correction at Grafton Correctional Institution;

IV. FACTUAL BACKGROUND - (Part 1 of 3 -- Pre and early post surgery excerpts)

14. March 26, 2007 while incarcerated by ODRC during a colonoscopy performed at Ohio State Medical Center (OSU Medical Center) a 10-15 centimeter mass was found obstructing plaintiffs' sigmoid colon-rectum. Biopsy samples were extracted and sent to pathology for examination;

15. April 9, 2007 plaintiff saw a colorectal surgeon at then Corrections Medical Center (CMC) now Franklin Medical Center (FMC) where he went over some of the biopsy results, colorectal cancer, end of stage 1, beginning of stage 2. Not until 2018 when plaintiffs medical records were received did he find out the biopsy of the tumor revealed DNA mismatched repair proteins on IHC; Defective MSH6 (Lynch Syndrome). Also present in the histologic type Adenocarcinoma tumor was crohn's like lymphoid response;

16. June 20, 2007 or thereabout while still incarcerated by ODRC plaintiff underwent low anterior resection surgery due to colorectal cancer. The procedure was performed and directed by gastroenterologist Dr. Mark William Arnold at OSU Medical Center. Plaintiffs sigmoid colon, tumor, partial rectum reservoir and 19 lymph nodes were removed. ODRC had OSU Medical Center under contract to perfrom the invasive surgery;

17. Directly after surgery plaintiff could not keep food down, and bile was uncontrollably released from his body. After two CAT scans a leak was found at the traverse-descending colon and rectal stump resection point (anastomosis site). OSU Medical Center team of doctors including Dr. Mark Arnold determined there was no room left to resection and resuture the colon. The team of doctors further concluded that it is so low in the large intestine that it would not infect plaintiffs body and will heal on its own. A total parenteal nutrition (pick line) intravenous tube cather was inserted into plaintiff at OSU Medical Center;

18. By the end of 2007 plaintiffs digestive system was working and he began experiencing frequent bowel movements (bm) accompanied with blood. November 29, 2007 a colonoscopy was performed at OSU Medical Center which found a stricture at the anastomosis site, rectal stenosis and ulcerated mucosa in the rectum;

19. February 14, 2008 Dr. Mark Arnold at OSU Medical Center performed a colonoscopy and attempted to dilate plaintiffs stricture, being unsuccessful Dr. Mark Arnold wrote two orders, the first for a private restroom for plaintiff, the second changing plaintiffs medication from loperamide 2 mg capsuls to 2.5 mg lomotil twice a day;

20. April 2, 2008 plaintiff filed a ADA reasonable accommodation request for a single man cell (SMC) due to frequent bowel movements, problems with cellmates over using the toilet and complications to better deal with the low anterior resection enabling plaintiff to manage his disability in a respectful manner while avoiding conflicts with cellmates over these issues. At the time beds were placed on the floor of the housing units. Some inmates assigned to the floor beds utilized the handicapped restroom even though they had a restroom designated for their use;

21. April 11, 2008 plaintiff was interviewed by GCI ADA coordinator who recommended plaitiffs request for a SMC be denied because plaitniffs condition is medical and not ADA;

22. April 15, 2008 warden Bradshaw adopted GCI ADA coordinators recommendation. Warden Bradshaws decision to deny plaintiffs request was based upon: not ADA;

23. April 23, 2008 plaintiff sent his ADA appeal to the office of the ADA coordinator for inmates, Mr. Gary Croft and the Special Needs Assessment Committee. Plaintiff based his appeal primarily on his condition being ADA and not medical along with having conflicts with cellmates and the handicapped restroom not readily accessible;

24. November 12, 2008 Mr. Gary Croft, ADA coordinator for ODRC inmates and the Special Needs Assessment Committee granted plaintiffs appeal. They obtained additional information from GCI, reviewing this information and plaintiffs appeal they recommended plaintiff be placed into a cell without a cellmate. Warden Bradshaw accepted the advisable decision and placed plaintiff into a cell without a cellmate;

25. There was a process due to receive the ADA SMC. Plaintiff had to apply (4267 form) to the institutional ADA coordinator, appeal his recommendation and the wardens decision to deny the reasonable accommodation request, go under observation, have Dr. Mark Arnold attemp to dilate the stricture and write a recommended order for a private restroom for plaintiff. (To remove the ADA SMC was basically a stroke of the pen);

26. In August of 2010 a biopsy of plaintiffs prostate was ordered. The probe was unable to pass through the intestinal tract stricture so urology ordered another colonoscopy to dilate the stricture. A colonic ballon was used at 18-19-20 cm. The gastroenterologist determined that the angle of the stricture at the anastomosis was the cause that made placement of the rectal probe difficult. (Preventing probe up colon for BX);

27. December 15, 2010 a perineal procedure was performed at OSU Medical Center where they went through the penis to extract prostate samples for biopsy since the routine procedure was not possible on plaintiff. The samples tested negative for cancer but plaintiff was placed on Terazosin 2 mg capsuls once a day for an enlarged prostate and urination issues;

28. November 3, 2015 plaintiff underwent yet another colonoscopy at OSU Medical Center that substantiated plaintiff suffers from rectal stenosis and stricture at the anastomosis site;

29. As a result of the low anterior resection surgery that consisted of removing plaintiffs descending colon (sigmoid) and malignant tumor a leak occurred at the anastomosis site creating the formulation of a stricture. Plaintiff still suffers from a significantly shorter large intestine (partial rectum and sigmoid colon removed) the irreparable stricture that contributes to multiple (12, 15 or 20 plus) daily bowel movements, uncontrollable flatulence, dealing with blood, soreness, leakage and strenuous bm at times. Plaintiff trusted OSU Medical Center surgeons to complete his surgery without these complications. Now plaintiff is left to deal with and endure these problems the rest of his life. There is a record of this impairment and ODRC/GCI has recognized it for over ten years;

V. RECENT PAST AND PRESENT DAY FACTUAL BACKGROUND EXCERPTS

30. These facts, situations and circumstances all predate the covet 19 pandemic protocol;

-6-

31. They're three time specific parts to this complaint. The first covers the removing of plaintniffs ADA SMC accommodation after ten years without providing a appeal process. Plaintiff was told he had to fill out a new reasonable accommodation request so an appeal could be procured to exhaust administrative remedies but only in regards to the new reasonable accommodation request claims. The second part of the complaint deals with plaintiffs claims after the new reasonable accommodation request was made, denied and appealed. The third part covers a second new reasonable accommodation request per Ms. Ware, then ADA GCI coordinator  advice and the appeal that followed;

32. Plaintiff is a qualified individual with a disability within the meaning of the ADA and section 504;

33. Plaintiff has suffered anatomical loss affecting the large intestine digestive tract organ. Relieving oneself is of central importance to daily live. Plaintiff is substantially limited and unable to perform the major life activity of bowel movements in the fashion and daily amount as the average person in society can perform. Plaintiff has 12-20 plus daily bm depending on good, average or bad days. Occasionally plaintiff has bm back to back to back;

34. Plaintiff flare ups are a daily and nightly occurence, never limited in duration that require him to substantially modify his daily regime;

35. Plaintiff requires bathroom access ability to use the bathroom as needed due to being incapable of controlling excretory functions (incontence), a need for frequent undelayed use;

36. Plaintiffs disablement or incapacity if you will in all reasonable probability will continue indefinitely for the rest of his life with no present or past recovery therefrom;

37. Plaintiff states he has a protected liberty interst in the ADA SMC in avoiding conditions of confinement that impose atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life;

38. Plaintiffs physical impairment (sigmoid shrunk down to anastomosis) substantially limits his colons ability to withold and control frequent bm. In addition to the irreparable stricture that contributes to plaintiffs frequent bm (result of sigmoid colon removal and anastomosis leak) is a life time impairment with permanent impact that does not allow his colon to function as the average persons. This significantly restricts plaintiffs colons capacity making it all but impossible to hold back bm the majority of the time which restricts the condition, manner and duration under which plaintiff performs the major life activity of eliminating waste and controlling his bowels as compared to the condition, manner and duration under which the average person in general population can perform these same major life activities;

39. Not to be gross or vulgar but plaintiffs system flushes completely out from time to time. It begins with stomach cramps, then one or two bm with larger than normal size stools, followed by four to six finger sized stools (plaintiffs normal size) then four to six bm of many small pebble size stool pieces, and finally diarrhea. Afterwards it takes three to six meals and

sometimes more before plaintiff begins having bm again. This is the only break plaintiffs system ever gets from his 12, 15, or 20 plus daily bm. Plaintiffs quality of life has drastically diminished since his surgery;

40. Plaintiff does not eat for 16-18 hours prior to a scheduled visit time and only eats 10-15 minutes before ending the visit. The four days a week plaintiff works he eats no breakfast or lunch and only eats after 3:00 pm. On Bibly study and church worship days plaintiff eats no breakfast. This is not a full proof plan to avoid problems, but the safest measure found over the years. Also, plaintiff misses meals and eats certain amounts to deal with cellmate schedules;

41. Plaintiff performs manual tasks of handwashing underwear, hang to dry before placing in a laundry bag for machine wash due to the oil based creams. Also self caring functions and hygiene issues of cleaning up after each bm, dealing with soft stools and blood and the need to strain at times, or grab stool with toilet paper to release, using witch hazel pads (purchased at commissary since 2015 when ODRC stopped providing them) to sooth area from using 7-10 rolls of toilet paper a week then applying either dibucaine or hydrocortisone creams (now also purchased at commissary) after each bm;

42. The short nature of plaintiffs rectum after surgical resection along with the previously mentioned complications that impact his major life activities require immediate and sometimes constant access to a toilet;

43. The purpose of Policy 55-SPC-01 (Assignment of Inmates to single occupancy cell/room) is to make available single occupancy cells for inmates who would not be appropiately housed in mulitple cells/rooms. This includes inmates with permanant disabilities or who have other special needs for single housing;

44. GCI is owned and operated by ODRC, a state agency. ODRC is subject to the Office for Civil Rights (OCR's) enforcement authority because it receives federal financial assistance from the Department of Justice (DOJ) mandating complaince with section 504 of the Rehabilitation Act of 1973 and the Americans with Disability Act (ADA);

45. Plaintiffs ADA SMC was provided for over ten years and five wardens;

46. 9/12/18 Defendant Douglas and plaintiff went over a Physicians Authorization required by central office to review plaintiffs long standing prescription for 2.5% hydrocortisone cream. The next day (9/13/18) plaintiff was told by nurse Langston the PA was overrode by defendant Eddy of central office;

47. Defendant Dr. Andrew Eddy is empolyed by ODRC as State Medical Director of the ODRC Collegial Review Committee. His duties include but are not limited to being responsible for the overall supervision of inmate Medical Services included but not limited to, the overall planning, design, implementation, monitoring, utilization managment, and evaluation of medical services provided within ODRC. Further he reviews recommended and prescribed medical care for Ohio prisoners to determine whether to authorize such prescibed medical care and is directly and proximately responsible for the denial of adequate and timely readily available prescribed health care for Ohio prisoners including aftercare treatment for colorectal cancer complications;

48. As the State Medical Director he is responsible for the review and revision of ODRC Medical Policies and Protocols. Through his employment with ODRC he has personal knowledge of ODRC rules, regulations, protocols. policies and proceedings regarding inmate medical diagnosis, treatment, care and particiaptes in the promulgation, interpretation and application of all ODRC policies, procedures and protocols related to providing medical care to Ohio prisoners;

49. In his role as State Medical Director of ODRC, he is in charge with determining what constitues medically necessary care and treatment for inmates in state custody. This includes determining through Collegial Review Process outlined in ODRC policy 68-MED-01 and Medical Protocol B-1, whether its medically necessary for an inmate to receive speciality services;

50. In the scope and course of his duties, as part of the Collegial Review Process, Defendant Dr. Eddy reviews medical records and discusses inmates conditions with medical personnel. Defendant Eddy has established a pattern of denying necessary medical care in violation of the civil rights of prisoners, thus establishing that the acts and conduct are being committed deliberately, purposefully and with intent to deprive prisoners of necessary healthcare and to violate their rights as set forth herein while violating federal statutory law;

51. Defendant Eddy is liable for implementing and overseeing state policies directly linking his conduct to discrimination as he is responsible for an official policy that authorizes, approves, encourged or knowingly acquiesed or tactically authorized the arbitrary and capricious actions of predecessor's Warden Eppinger, Health Care Administrator Hannah and ADA coordinator for inmates Defendant Wilson, Defendant Warden Foley and ADA Defendant Adams in the deprivation of plaintiffs rights.

52. 10/22/18 HCA Predecessor David Hannah stated all ADA SMC are being discontinued. He made the accusation plaintiffs paperwork is only a recommendation and not a confirmed ADA. Years ago Hannah placed plaintiff's ADA SMC accommodation status on the institutional computer system as in his inmate medical file as permanant with no expiration date;

53. HCA Predecessor Hannah was the Health Care Administrator (HCA) at GCI, charged with oversight and implementation of Health Care for all prisoner's at GCI including but not limited to plaintiff and others similarly situated;

54. HCA Predecessor Hannah for GCI was charged with the supervision and oversight of all medical personnel and care at GCI for all GCI prisoners and was responsible and liable for any and all acts and conduct of said personnel and was directly and proximately responsible for all denial of adequate and readily available prescribed health care for GCI prisoner's, including aftercare treatment for colorectal cancer survivors with complications via surgery for plaintiff and others similarly situated;

55. Further HCA predecessor Hannahs responsibilities included but are not limited to adhering to and ensuring all medical staff comply with ODRC policy and protocol and to review Health Care analytic policies and protocols on an annual basis. Also to ensure each policy and protocol is implemented in

accordance with ODRC guidelines and test medical staff on current medical related policy and protocol;

56. Prior to or on 10/23/18 Defendant Douglas, nurse Brett Langston, predecessor ADA coordinator Vanessa Shepherd. L. Hanko HCA assistant and predecessor warden Eppinger (GCI ADA Committee) decided that a single man cell is not medically necessary for plaintiff;

57. Predecessor's Warden Eppinger, GCI ADA coordinator Vanessa Shepherd along with Defendant Douglas deliberated as an assembly or body dealing with policy;

58. GCI ADA committee showed total disregard for plaintiff's ADA needs. They treated and distinguished against him on a categorial basis rather than according to actual merit. There was no due process in their decision making process;

59. Defendant Eddys' acts and conduct relating to the instant action established an ongoing pattern of conduct and is liable for implementing and overseeing state policies directly linking him to discrimination;

60. 10/23/18 Defendant Douglas and nusrse Brett Langston notified plaintiff all SMC are being rescinded and will be doubled up. During this visit nor at any other time did defendant Douglas question plaintiff about his current condition, disability or otherwise. GCI medical interpreted plaintiffs ADA accommodation to be only a recommendation and not a confirmed ADA;

61. 10/23/18 plaintiff sent predecessor warden Eppinger a kite presenting that his ADA was confirmed when his appeal was granted by Mr. Gary Croft, ADA coordinator for inmates and was based upon plaintiffs condition being ADA and not a medical issue;

62. 10/24/18 Plaintiff contacted Disability Rights Ohio by U.S. mail service with his ADA concerns;

63. 10/25/18 Plaintiffs attorney Katelyn Pruchnicki sent predecessor warden Eppinger a letter by both fascmile and ordinary U.S. mail service concerning plaintiffs ADA SMC with medical records from OSU Wexner Medical Center attached;

64. In a pre-emptive measure during doctor sick call plaintiff requested an order for a medical bottom bunk restriction. Defendant Douglas also placed in her notes on the computer that plaintiff has permission to use the handicapped restroom due to frequent bowel movements. These restrictions were ordered for the plaintiff prior to the ADA SMC accommodation that was over ten years ago. Both defendant Douglas and nurse Brett Langston were present and neither knew anything about the institutional handicapped restrooms, nor were they familiar with which housing units have them, their set-up or where toilets are located in the housing units. It is hard to believe each were members of the GCI ADA committee. This all transpired on 11/2/18;

65. Defendant Douglas as Chief Medical Officer (CMO) of GCI has sole responsibility for all matters involving purely clinical judgment. Additional responsibilities of the CMO include, but are not limited to day-to-day medical care of offenders at the institutional level, to adhere to and ensure all medical staff complies with ODRC policy and protocol. Review and approval of all medical restrictions. And to review on a annual basis all Health care policies and protocols;

66. Medical restriction orders are temporary and must be regularly reviewed and rewrritten. These restrictions shall be ordered by the institution physician or other advanced medical provider to address functional limitations. Long term medical restrictions shall be written for those inmates diagnosed with long term or functional limitations. The institution physician shall review each long term medical restriction at least annually for continued need. Medical Protocol B-19;

67. Plaintiffs ADA SMC was never reviewed annually or rewritten by CMO Defendant Douglas. It was not a long term restriction but a permanant ADA SMC;

68. Defendant Roger Wilson is both Chief Inspector and ADA coordinator (Chair for Special Needs Assessment Committee) for ODRC inmates who is charged with the supervision and oversight of all institutional ADA coordinator's and is responsible and liable for any and all acts and conduct of said coordinators and is directly and proximately responsible for the denial of reasonable adequate ADA accommodations in accordance to the ADA and section 504 of the Rehabilitation Act of 1973. Further, Defendant Wilson is responsible for training the institutional ADA coordinators for inmates regarding pertinent Departmental and Institutional Policies. Defendant Wilson is part of the Special Needs Assessment Committee, who adjudicates ADA appeals with a representative from the Bureau of Medical Services, a representative from the Bureau of Behavioral Health Services and a representative from Legal Services;

69. All copies of Request for ADA accommodation decisions are forwarded to the Operation Support Center ADA coordinator for inmates, Defendant Wilson;

70. 11/9/18 Plaintiff kited predecessor Shepherd to be passed over to medical to speak with her;

71. Predecessor Shepherd was the instutitonal ADA coordinator for GCI who was appointed by the managing officer to ensure compliance with Title II of the ADA and to oversee the training on the subject within the institution. Such Training shall include sensitivity training relative to interacting with inmates having these impairments, as well as a review of pertinent departmental and institutional policies. The institutional ADA coordinator for employees and inmates, along with training officers, shall work together to ensure all institutional staff receive training on pertinent ADA disability issues. The institutional ADA coordinator receives inmate reasonable accommodation requests, interviews the inmate, investigates, then makes a recommendation to the managing officer;

-11-

72. 11/9/18 After no response to plaintiffs 10/23/18 kite, he re-kited predecessor warden Eppinger to see if he received plaintiffs first kite and letter or should plaintiff resend it?;

73. 11/9/18 After not hearing from predecessor Eppinger, attorney Pruchnicki sent a follow up letter to him via email;

74. 11/16/18 HCA Predecessor David Hannah stated all paperwork is filled out to double up the ADA SMC with the exception of one, a guy who has only half his skull.

75. 11/20/18 Plaintiff received a letter from Disability Rights Ohio, attorney Andy Brennan. He closed the agency's involvement since ODRC/GCI had not given plaintiff a cellmate. Attorney Brennan stated if plaintiff receives a cellmate to contact him so he can contact ODRC staff and advocate for them to undo it;

76. 11/20/18 Plaintiff received from predecessor warden Eppinger his kites of 10/23/18 and 11/9/18 to him. Along with the returned kites were plaintiffs advocate letter, his attorneys letter along with a letter from predecessor warden Eppinger dated 11/16/18 stating their taking the plaintiffs ADA SMC because chief medical officer (Defendant Douglas) and the ADA committee determined that a SMC is not medically necessary, however plaintiff will continue to have access to the handicapped facilities within his Unit. He went on to say per policy 64-DCM-02 Inmates with Disabilities, section E(2), if you disagree with this decision you may appeal to the Special Needs Assessment in care of the Operation Support Center ADA coordinator for inmates;

77. Predecessor Warden Eppinger provided handicapped restroom accommodation does not effectively accommodate plaintiffs disabled limitations. The duty to reasonable accommodate is not satisfied because predecessor Eppinger did not do what is necessary to enable plaintiff to be able to defecate when needed. This provided accommodation is unreasonable and violates the ADA and RA;

78. Predecessor Warden Eppinger knew plaintiff suffers from a disability, and Eppinger knew plaintiff has numerous daily bowel movements due to his disability. This places plaintiff in a position that subjects him to adverse actions when dealing with a cellmate. Eppinger failed to provide the appropriate accommodation when he removed plaintiffs long standing well settled reasonable ADA SMC accommodation;

79. Predecessor Warden Eppingers 11/16/18 letter is inaccurate and procedurally incorrect. First, it states plaintiff requested a SMC, which plaintiff clearly did not. Secondly, it finds the SMC is not medically necessary, it was an ADA SMC for over ten years. Lastly, it states if plaintiff disagrees with the decision he can appeal to the ODRC ADA coordinator, which plaintiff found out he could not per policy. At this time plaintiff did not request a new SMC ADA accommodation, only that Eppinger abide by the ADA accommodation in place as his predecessor's did. Moreover, policy 64-DCM-02 in place at the time provided no authority to remove an ADA SMC accommodation, it does provide authority to appeal a decision that denies a reasonable accommodation request (4267 form). It's policy 55-SPC-01 at the time that authorized the removal of a SMC restriction and only if the inmate is transferred to another facility. The policy is still unlawful as it provides no process for an appeal;

-12-

80. These policies remain violative to all ADA and Section 504 inmates. They're deficient and lead to the deprivation of cognizable liberty interests to those that have a legitimate claim of entitlement to such protected interests;

81. Predecessor warden Eppinger was part of the GCI ADA Committee, he determined both the inquiry-investigation as the warden and conducted the adjuciation. His self review alone is a conflict. Besides being fundamentally unfair, holding two such positions simultaneously allowed Eppinger to make bias decisions depriving plaintiff appropriate accommodation in violation of the ADA and RA, then ensure the deprivation stands. Moreover Policy 64-DCM-02 did not authorize the removal of the ADA SMC nor did 55-SPC-01 authorize the removal of the ADA SMC within the same instutiton and only for long-term restrictions when transferred to another instutition;

82. Defendant's using State policies have unlawfully made plaintiff who had a prior accommodation to apply again for somehting he already had and was just unlawfully removed. This procedure goes back to the same authorities and committee who just removed the ADA SMC. The procedure manner, conduct and actions in taking away the accommodation are lost because there is no available authority to exhaust administrative remedies. (No appeal process for the removal of the accommodation in the first place);

83. Predecessor Eppinger, Defendant Eddy and Defendant Stanforth by and through state policies denied plaintiff fair opportunity to be heard after they unlawfully rescinded plaintiffs ADA SMC. This has caused undue and significant hardship upon plaintiff in relation to the ordinary incidents of prison life.

84. 11/20/18 Predecessor HCA David Hannah allegedly made the comment "Larson has 15-20 bm only on his bad days". Plaintiff understands frequency and urgency are not the only determinative factors, but here they are very pertinent ones;

85. 11/21/18 Plaintiff sent out three kites: (1) To Predecessor Eppinger asking what good is the appeal process in my situation? Would it not be futile to appeal to the committee that granted the ADA SMC? They could grant it again and you could trump it like you just did; (2) To predecessor Hannah stating my average daily bm and use of 7-10 rolls of toilet paper a week; (3) To Defendant Douglas with my concerns of inaccurate information possible being used to determine that a SMC is not medically necesasary. Also how to get meaningful access to the handicapped restroom when it only allows for one inmate at a time in the room and is utilized for both shower and toilet use?;

86. 11/26/18 Plaintiff received his 11/21/18 kite back from predecessor Eppinger stating "... you have a right to appeal, utilize this if you wish." Signed and dated 11/26/18 by predecessor Eppinger;

-13-

87. Clearly there is no appeal process when a managing officer (Predecessor Eppinger) removes a ADA SMC accommodation or restriction. Both Eppinger and then Deputy Warden of Special Services Mr. Steve Reynolds insisted that plaintiff had a right to appeal. Plaintiffs appeal was returned from Defendant Roger Wilson for lack of a 4267 reasonable accommodation request form. A 4267 form is only generated by an inmate requesting some accommodation. Here at this point plaintiff made no such request, thus no 4267 form. To fill out a new reasonable accommodation request (4267 form) with a predetermined denial plaintiff would not be appealing Eppingers decision to remove the ADA SMC accommodation, but the new decision and new claims. To appeal the denial of the new ADA SMC accommodation is a wholly different matter than appealing the removal of the ADA SMC accommodation that was a long standing, well established, settled, identified, assessed, approved and the appropriate reasonable accommodation provided per ADA, Section 504 standards and ODRC policies;

88. 11/27/18 Plaintiff sent ADA coordinator predecessor Vanessa Shepherd a kite requesting a appeal form for the Special Needs Assessment Committee and ODRC ADA coordinator for inmates;

89. 12/3/18 Plaintiff received his 11/9/18 kite from predecessor Shepherd stating she wanted a reason in writing why plaintiff needed to speak to her. This kite was not signed or dated;

90. Both predecessor Eppinger and Deputy Warden Reynolds stated that plaintiff requested a SMC which is far from the truth. These statements are truly circuitous. Plaintiff only requested predecessor warden Eppinger to abide by the ADA SMC accommodation in place for ten years;

91. 12/10/18 Plaintiff received his kite back from predecessor HCA Hannah sent on 11/21/18. The kite simply said please sign up for nurse's sick call to possibly be seen by the doctor. This kite was neither signed or dated;

92. 12/11/18 Plaintiff received his kite back from ADA predecessor Shepherd that was sent 11/27/18 requesting an appeal form. The kite simply asked: "What is your special need?" The kite was not signed nor dated;

93. The kite sent to Defendant Douglas on 11/21/18 was never returned to plaintiff;

94. On 12/17/18 at approximately 3:00 pm plaintiff was called to medical for nurse's sick call although his pass was for 6:00 pm as routinely scheduled. As plaintiff spoke to the nurse HCA predecessor Hannahs name came up and he came over to the nurse's station. Both nurse's were called out on an emergency. Hannah told plaintiff Columbus wants those top bunks filled in the SMC. Hannah told plaintiff to fill out a new ADA reasonable accommodation request and that it will most likely be denied so you can appeal it. Plaintiff told Hannah that he already has an appeal into defendant Roger Wilson, ADA coordinator for ODRC inmates. Hannah said okay, but would not deny or confirm that he said plaintiff only uses the bathroom 15-20 times a day on his bad days. Hannah did say that he is stuck on the ADA committee for now because ADA predecessor Shepherd is gone for an undetermined length of time. Plaintiff asked Hannah then that would be Defendant Douglas, R.N. Langston, your assistant Hankle, Eppinger and yourself? Hannah said yes and the ADA committee

meets once a month. Hannah also told plaintiff that Defendant Douglas used his last chronic care report to determine a SMC is not necessary. Plaintiff told Hannah that on his good days he has roughly 12 bm daily, on average days somewhere in the vicinity of 18 bm in a day and on bad days 20 plus daily bm. Plaintiff asked Hannah are all SMC being taken? Hannah confirmed that all SMC but one where a guy has only half his skull are gone. Plaintiff said even previously approved ADA SMC? Hannah replied yes. At this time both nurse's returned and plaintiff asked the nurse taking care of him if his SMC is still on the computer? The nurse looked and said no only bottom bunk restriction. Hannah jumped in and told the nurse there is no need for Larson (plaintiff) to see the doctor we spoke, the nurse asked Hannah per inmate request? Hannah said no per Hannah. By doing this Hannah advertently blocked plaintiff access to Defendant Douglas to inquire about the information used to determine that there is no medical need for a SMC. As Hannah was leaving he said this appeal process don't make sense, then he told the nurse I'll be upstairs with the warden (Eppinger) Larson's (plaintiff) buddy;

95. Predecessor Hannah agreed to fill out another (new) 4267 form is a frivolous procedure because of the predetermined notion it will be denied, he went on to say it is only a formality so you can appeal the warden's (Eppinger) decision;

96. 1/3/19 At approximately 12:40 pm plaintiff was called over to see HCA predecessor Hannah. Upon arriving at medical Hannah handed plaintiff a ADA Inmate Reasonable Accommodation Request Form (4267) and said fill it out and get it back to me ASAP. Hannah again said its only a formality it will be denied and then you can appeal. Plaintiff told Hannah he was adviced against doing this, Hannah said then you can't appeal the warden's (Eppinger) decision. Plaintiff said he is being denied access to the courts, Hannah said no just appealing the warden's decision. Plaintiff then said he can't exhaust his administrative remedies and will face procedural default when in fact he submitted his claims to central office (Defendant Wilson - ODRC ADA Coordinator) and they were returned to plaintiff because of Eppingers incorrect and incompetent procedural paperwork and ORDC Adminisrtative Rules. Hannah handed plaintiff 4267 form and said consider filling it out and getting it back to me ASAP? Hannah said Columbus did not like the warden's (Eppinger) paperwork. Hannah stated again that Eppinger discontinued plaintiff's ADA SMC for bed space per Columbus;

97. In essense and in part plaintiff is suing the policies and Medical Protocols that are being followed to deny him health care (ADA SMC), as well as those who promulgate, interpret and apply such policies and medical protocols;

98. At this time plaintiff never requested a new reasonable accommodation as predecessor Eppinger and Deputy Warden Reynolds alleged. If plaintiff would have requested a new reasonable accommodation for a SMC, Defendant Wilson (central office) would not have returned plaintiffs appeal looking for a 4267 form (reasonable accommodation request) and HCA predecessor Hannah would not have been asking or so adamant toward plaintiff to fill out one and get it back to him ASAP;

-15-

99. 1/15/19 At approximately 8:15 am as Defendant Douglas and plaintiff went over his lab results for chronic care Defendant Douglas ask plaintiff if he is able to use the handicapped restroom? Plaintiff said he don't have to because ODRC/GCI has not given him a cellmate. Plaintiff inquired to Defendant Douglas why she asked? Defendant Douglas said I see I wrote an order for you to use it because of your bowel and frequent bm;

100. 1/22/19 Plaintiff was called down to the Unit Managers Mr. Wessons office. Mr. Wesson told plaintiff that their activating the top bunk in plaintiffs cell this week and he will be getting a cellmate, Plaintiff told Mr. Wesson nothing has changed in his condition and that his Direct Grievance against the warden has not been answered. Also that plaintiffs appeal was returned to him due to warden (predecessor Eppinger) actions or lack of paperwork. Plaintiff ask Mr. Wesson where is the due process in all this? Mr. Wesson stated all he knows is that the institution said they're activating it;

101. 1/23/19 Plaintiff placed in the U.S. Mail Service a Americans with Disability Act and Rehabilitation Act of 1973 Discrimination complaint addressed to the Department of Justice;

102. Plaintiff was housed in A4-190B SMC from April 2013 until February 27, 2019, prior to that he was housed in A2-185B ADA SMC;

103. 2/27/19 at 6:00 pm plaintiff received a cellmate, Dave Buchanan, #540-508;

104. Since receiving a cellmate, Predecessor Eppinger placed plaintiff in unsafe housing conditions.  This living arrangement poses possible harm on a daily basis and especially with each new unknown cellmate;

105. Plaintiff sent attorney Andy Brennan of Disabailty Rights Ohio correspondence informing him plaintiff was given a cellmate;

106. 3/15/19 Plaintiff received a release form from attorney Andy Brennan;

107. 3/25/19 Plaintiff returned the signed release form to Attorney Andy Brennan;

108. 4/16/19 Attorney Brennan sent correspondence to plaintiff recommending plaintiff file a new reasonable accommodation request form and included a blank copy. Attorney Brennan also notified plaintiff he contacted ODRC Staff requesting that they reconsider plaintiffs ADA SMC;

109. 4/17-18/19 Plaintiff was admitted into GCI medical infirmary for observation. Plaintiff had 19 bm in the 24 hour observation period verified by nurses on all three shifts that entered the room and noted each stool for color, size and form then flushed the toilet. Plaintiff seen Defendant Douglas during the 24 hour period and she had a nurse give plaintiff diapers to wear so plaintiff did not have to continue wearing or washing his soiled underwear;

110. After this May 2019 GCI Medical observation that revealed 19 bm in a one day time frame subjectively shows state officials acted with a sufficiently culpable state of mind;

-16-

111. 5/2/19 Plaintiff received a letter from Attorney Andy Brennan dated 4/29/19 stating ODRC/GCI will not be reinstating your ADA SMC at this time;

### VI. Part II --- PERTINENT FACTUAL BACKGROUND AFTER FILING, DENIAL AND APPEAL OF NEW REASONABLE ACCOMMODATION REQUEST FOR ADA SMC

112. 5/20/19 Plaintiff filed a New Reasonable Accoomodation Request form 4267 on the advice of attorney Andy Brennan;

113. 5/29/19 Plaintiff was interviewed by GCI ADA coordinator (predecessor V. Shepherd) regarding the new inmate reasonable accommodation request;

114. 6/17/19 Plaintiff was moved from A4-190B to A4-310B with inmate Jeffrey Phillips #433492;

115. 7/8/19 Plaintiff sent predecessor V. Shepherd a kite about the status of his Reasonable Accommodation Request;

116. 7/16/19 Plaintiff received his kite sent to V. Shepherd on 7/8/19 informing plaintiff that a decision was made and he was approved for a cell only restriction and not a single cell. Predecessor Shepherd said she will send plaintiff a copy of that approval;

117. 7/19/19 Predecessor Shepherd called plaintiff down to her office and gave him the ADA Coordinators Action Form dated 7/10/19 without his Inmate Reasonable Accommodation Request. The action form approved a cell only and continued use of the handicapped restroom. Plaintiff ask Shepherd what purpose was there in putting him under observation May 17 and 18? Plaintiff said to Shepherd do you know I had 19 bm in a 24 hr. period? Ms. Shepherd said yes I know you had a lot of bm but I don't know why they did it;

118. The reasons plaintiff was given the ADA SMC accommodation remain justicable and still exist as attested to. Plaintiff suffers and experiences the same complications as he did from the onset after his surgery. They include symptoms of stenosis, frequent bm that include strenuous and painful bm at times, rectal itching and burning, discomfort, incontinence, stool leakage, flatulence and not being able to hold bm back when the need to defecate hits him the majority of the time;

119. Removing plaintiffs ADA SMC stripped him of the civilized measure of life's necessities. That is it resulted in inadequate toilet access, shelter and medical care. Then under the new reasonable accommodation request predecessor's warden Eppinger, ADA coordinator Shepherd, and Defendant's Wilson, Stanforth and Eddy deprived plaintiff of life's necessities;

120. Predecessor ADA Coordinator Vanessa Shepherds findings are flawed and inaccurate in her ADA coodinators action summary. First plaintiffs ADA was confirmed and not medical. Secondly, beds on the floor and use of the handicapped restroom was not the only determinative factor in granting the 11/12/08 appeal by ODRC ADA coordinator and the special needs assessment committee. Third, single man cells have been revisited in 2012 and 2015 (2015 per directive from defendant Eddy). Fourth, Unit Manager Mr. Wesson had nothing to do with any cellmates plaintiffs had, besides their not going to

always be plaintiffs cellmates. Lastly, no harrassment or violence from plaintiffs cellmate is incomplete and ambiguous, again because they won't always be cellmates as evidenced by the number of cellmates plaintiff had since that statement was made by predecessor V. Shepherd;

121. What needs to be taken into account and ORDC/GCI failed to do so is that there is much more to having a cellmate and plaintiff being able to use the cell toilet when his cellmate is not, as allegedly and bluntly stated to attorney Andy Brennan. For cellmates to co-exist certain expectations must occur. Such as allowing one to typically nap un-interupted, not disturbing a callmate when on GTL tablet phone in the cell and allowing for alone time un-intruded to relax, study, watch T.V. or play video games etc. without being chased out on a regular basis;

122. Bathroom facilities are services or activities of a prison, and it must provide a disabled prisoner with an adequate and appropriate means of relieving himself. Plaintiffs colo-rectal cancer surgery complications require bathroom access and the ability to use the bathroom as needed. The cell only environment and use of the handicapped restroom do not provide the required accommodation that effectively accommodates plaintiffs disabled limitations (The overall accommodation is ineffective);

123. Predecessor's Eppinger and Shepherd were deliberately indifferent to plaintiffs ADA needs when they unlawfully discriminated against plaintiff by not providing plaintiff meaningful access to a restroom (reasonable accommodation) that is effective to his physical limitations. The provided cell only and use of the handicapped restroom are not reasonable accommodations but ineffective and discriminatory in not providing the reasonable and effective requested accommodation of a SMC;

124. 8/8/19 Plaintiff sent a kite to predecessor Shepherd requesting his ADA reasonable accommodation request paperwork to attach to his appeal;

125. 8/14/19 Shepherd called plaintiff to her office and handed him the 8/8/19 kite without a signature or date and said she can't find plaintiff's paperwork. Luckily plaintiff made a true copy for just such an occasion;

126. By placing another inmate in a cell with plaintiff places them in a situation because plaintiff has no control over his bowel (unexpected bm) along with uncontrollable flatulence. Its documented that previously plaintiff had problems with cellmates over the availability of the toilet (i.e. multiple times plaintiff uses the toilet and sometimes goes back to back to back);

127. Subjecting another individual into a forced situation where he will encounter these conditions can only develop into a conflict sooner or later resulting in a negative discourse. Plaintiff has no control over these issues of urgency and frequency and another individual should not have to deal with such conditions;

128. Plaintiff suffers undue hardship in the living arrangement of being housed with a cellmate and cannot rely on the handicapped restroom because it is not readily available alot of times;

-18-

129. The handicapped restroom is not readily available for use. There is interference with the service or activity depriving meaningful access. The handicapped restroom remains locked so one using it is at the mercy of the correctional officier to unlock it, depending on the officer this can be up to a 20 minute wait. This is a custom of GCI in A-4 and B-6 and their normal practice of locking the handicapped restroom. Handicapped individuals are told to secure the door when they finish. Occasionally the door is left open (unlocked) and everyone in the housing unit uses the handicapped restroom. The most agonizing is the interference that comes from the fact the handicapped restroom is designed to provide service for both shower and toilet use. This cannot be accomplished simultaneously, it is utilized one person at a time, either toilet or shower use. Wheelchair, walkers and guys with canes keep the handicapped in use for hours on end, sometimes one after the other. The floor remains wet causing a potentially dangerous condition. This inhibiting access to the facilities occurs quite often with the number of daily bowel movements plaintiff has. Although services are not completely foreclosed to plaintiff, and GCI has provided some accommodations they are not reasonable because this type of interference and inadequacy of the handicapped restroom deters or blocks plaintiff from attempting to access the service or activity otherwise available to him;

130. Plaintiff is not alleging a complete exclusion from a service or activity, but a valid failure to reasonable accommodate claim under Title II and Section 504. The handicapped restroom is not accessible all night long or during count times when plaintiff is locked into a cell with a cellmate, besides not being readily available during the day. Nor is plaintiff alleging design defects but, interference with a service or activity;

131. The handicapped restroom does not provide plaintiff with an adequate and appropriate means of relieving himself. The evolving standards of decency mark the progress of a maturing society and the dignity of man require the appropriate accommodation of a SMC. That is to acquire meaning as public opinion becomes enlightened by a humane justice;

132. Plaintiff has had 14 different cellmates from February 27, 2019 until today (8/16/20). All their names, numbers and dates of moving in and out are available;

133. 12/2/19 Defendant Stanforth nearly ten months after disposition (2/17/19) added her comments to plaintiffs appeal (GCI1218000034) coincidently only eight days prior to plaintiffs appeal being heard on the new reasonable accommodation request by her colleague and supervisor ODRC ADA coordinator and Chief Inspector, Defendant Roger Wilson. Defendant Stanforths comments are riddle with inconsistencies and outright incorrect information. Defendant Stanforth stated "... Please keep in mind, there are special correctional facilities for offenders who cannot function within general population due to bladder or bowel issues. At the time you saw Dr. Douglas in 2018, you were not identified as having a need for an institution with special ADA accommodations.".;

134. Plaintiff has functioned okay for over ten years in a ADA SMC without incident or threat of being transferred. Futhermore, Policy 55-SPC-01 does not exclude GCI from having single cell occupancies. Defendant Stanforths insitution with special ADA accommodations is none other than one, Pickway

Correctional Institution - Frazier that are no more than ODRC's equivalent of nursing homes for the cronically ill (such as those needing oxygen or dialysis) or hospice (for the terminally ill) or Franklin Medical Center that houses severe cases of the ill and colostomies;

135. Defendant Karen Stanforth, Assistant Chief Inspector, Medical R.N., part of her duties include handling appeals from inmates as set forth in OAC 5102-9-31(K) and direct grievances to the office of the chief inspector of ORDC as set forth in OAG 5120-9-31(M). Further Defendant Stanforth represents that she is custodian of records of appeals and grievances;

136. Defendant Karen Stanforth, ODRC assistant chief inspector is responsible for investigations of alleged violations of state and federal laws and codes;

137. Plaintiff was engaged in grievance procedures and ADA enjoyment protections. These activities are protected by the ADA and RA. Defendant Stanforth knew of Plaintiffs exercise of protected rights via grievances and appeals;

138. Defendant Stanforth used Medical Protocol B-19 in her comments to deny plaintiff's appeal, reference number GCI1218000034. Plaintiff had to jump thru many hoops in attempt to obtain a copy from both the institutional liberian and inspector with no success, only roadblocks. Plaintiff finally obtained a copy from the wardens assisatant, Mr. Kastler. Although plaintiff had to have a few communications with Mr. Kastler even after he contacted Columbus for approval to release copies and guidance. Plaintiff finally was told by Mr. Kastler that this Medical Protocol B-19 is the latest version on 8/11/20. This is why plaintiff has relied upon his copy of Medical Protocol B-19 in this complaint;

VIII. Part III -- PERTINENT FACTUAL BACKGROUND AFTER LATEST INMATE
REASONABLE ACCOMODATION REQUEST FOR SMC

139. This is the reason for the amended complaint;

140. In the time era of March 2021 GCI decided to limit each individual to two rolls of toilet paper per week;

141. No way could I survive on 2 rolls per week plus the two I am permitted to purchase at commissary. 4/7/21 I put in a reasonable accommodation request for six rolls of toilet paper per week;

142. I was interviewed 4/29/21 by ADA coordinator Robbyn D. Ware who later recommended that I be issued additional toilet paper per week, signed by Defendant Foley on 5/10/21;

143. On 5/13/21 ADA coordinator predecessor R. Ware called me down to her office to give me a copy of the ADA approval for extra toilet paper. ADA Ware ask why I don't have a SMC? After telling her why she said file it again with the new staff;

144. Toilet paper is passed out every two weeks so the institution provides 12 rolls and plaintiff purchases 4 rolls in the two week period and usually plaintiff makes it unless he has a bad week in which he is permitted to request more from the correctional officer;

145. After giving some thought to refiling another reasonable accommodation request plaintiff figured its only fair to give the successors Ware, Zielinski and Foley an opportunity to rectify the accommodation;

146. On September 9, 2021 plaintiff filed another inmate reasonable accommodation request for a SMC with predecessor R. Ware ADA coordinator;

147. About this time plaintiff found out that Ms. R. Ware was no longer employed at GCI;

148. Plaintiff spoke to Defendant Adams twice during and prior to A-4's 14 day Quarantine about locating the reasonable accommodation request sent to Ms. Ware. On October 6, 2021 plaintiff emailed his concern to Defendant Barry who said once plaintiff gets out of quarantine to copy it and resend it because the original can't be located;

149. October 15, 2021 plaintiff resubmitted a true copy of the reasonable accommodation request to both Defendant Adams and Defendant Barry;

150. Plaintiff complained about the lock being broke in A-4's handicapped restroom in his request for a SMC. There were various scheduled meetings with both Defendant's Adams and Barry some were cancelled;

151. December 7, 2021 Defendant Admas interviewed plaintiff about the inmate reasonable accommodation request. The original request dated 9/9/21 was found;

152. January 12, 2022 plaintiff received the ADA Coordinator's action form signed by Defendant Adams December 7, 2022 and by Defendant Foley December 22, 2022. The findings and basis for the recommendation states:'Mr. Larson is requesting a single cell to having colon cancer syndrome. The treatment caused complications that include frequent painful bowel movements and stool leakage. This request cannot be accommodated because Grafton Correctional Institution does not have the authority to change the institutional bed count. ... Since he submitted this report he has been moved from Unit A4 to A2, in effort to improve his access ...".;

153. GCI changes the bed count on a daily basis for guys going home or new guys coming in. The total bed count is also changed when B-8's Mental Health Unit inmates are placed into SMC for safety purposes;

154. I was moved from A4 to A2 on November 15, 2021;

155. Since moving to A2 I have had 7 different cellmates;

156. When I first moved to A2 inmates were allowed to use the handicapped restroom for toilet, shower or washing dishes. There was a inmate writen sign over the sink stating: "Please clean up after your done with bowls and dishes. If you don't we will lose the privilge of using this restroom";

157. Plaintiff brought this to Defendant Foley's attention and the sign was removed and replaced with Unit Manager Tepus sign stating "Please clean up after yourself or you will lose the provilege (sic) of using this room.".

158. Afew months back the sign was changed again to Handicapped use only, no signature or date. The handicapped restroom remains a community restroom for whatever use one may need. A2's handicapped restroom is unlocked the majority of the time. If it is locked most correctional officers will unlock it for anyone. This seems to be the norm now in all housing unit blocks that have handicapped restrooms;

159. Please see the Declarations of Gavon Ramsay #760295 and Lonnie Prather #452090 attached hereto;

160. On 1/18/22 I appealed Defendant Adams ADA coordinator and Defendant Foley, Warden's decision to Defendant Roger Wilson, Chair, Special Needs Assessment Committee. I had pointed out that Policy 55-SPC-01 authorizes and permits SMC at GCI. Further plaintiff requested that if such a obscure reason GCI cannot change their bed count, to allow a modification of this to permit a SMC for plaintiff;

161. March 21, 2022 Roger Wilson and the Special Needs Assessment Committee answered with they followed up communication with Plaintiffs institutional inspector, Mr. Adams, who confirmed with Unit Managers to ensure that special needs individuals have free access to the handicapped restroom. The committee fell silent on the bed count issue and GCI not having authority to change the bed count;

162. Free access does not mean readily available access. Free access is to give permission to use the handicapped restroom;

163; Even when the handicapped restroom is ran properly with the door locked, meaningful access to the handcapped restroom and the effectiveness of this accommodation is not producing the proper and intended effect and it is not capable of performing efficiently or as expected to accommodate plaintiffs physical limitations because of the dual purpose, single usage;


IX. - CLAIMS -- Part I -- Revoking ADA SMC Accoomdation

164. Plaintiff incorporates the allegations set forth in paragraphs 1-163 of this complaint as if fully rewritten herein;

FIRST CLAIM
165. Predecessor's warden Eppinger, HCA David Hannah, ADA coordinator Vanessa Shepherd and Defendant's Janice Douglas, Andrew Eddy, Roger Wilson and Karen Stanforth were delerately indifferent when they were persoanlly and knowingly violatating law, rule and policy, or personally and knowingly approved or condoned such a violation to plaintiffs approved and provided ADA SMC by removing the needed and required reasonable accommodation without authority to do so indicating intentional and deliberate discrimination by their actions and conduct in violation of the Americans with Disabilities Act and Section 504 of The Rehabilitation Act of 1973;

166. Defendant Dr. Eddy of ODRC Medical Services and Karen Stanforth, assistant, medical has allowed policies to exist which have had the impact of allowing insitutional staff to produce arbitrary and capricious actions and conduct in denying inmate reasonable accommodation requests that violates ADA and RA;

X. CLAIMS -- Part II -- DENIAL OF NEW REASONABLE ACCOMMODATION
REQUEST FOR ADA SMC

SECOND CLAIM

167. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-166 as if fully rewritten herein;

168. Predecessor's Warden Eppinger and GCI ADA coordinator Vanessa Shepherd breached a duty of reasonable accommodation violating the Americans with Disabilities Act and the Rehabilitative Act of 1973, Section 504 when they unlawfully discriminated against plaintiff in not providing plaintiff meaningful access to a restroom (toilet). The cell only restriction and use of the handicapped restroom are not reasonable accommodations because they provide no meaningful access and therefore ineffective to plaintiffs physical disabled limitations that leaves plaintiff in a state of privation. These acts and conduct constitute unlawful discrimination in not providing the required and requested effective accommodation;

169. Defendant Andrew Eddy, Roger Wilson and Karen Stanforth unlawfully discriminated against plaintiff in failing to provide a reasonable accommodation on appeal after being put on notice that plaintiff is denied meaningful access to the handicapped restroom in violation of the ADA and RA requirement to provide accommodation that effectively accommodates a disabled individuals limitations;

170. Defendant Eddy of ODRC Medical and Defendant Douglas GCI Chief Medical Officer acted deliberately indifferent to plaintiff physical needs when they denied reinstating plaintiffs ADA SMC after placing plaintiff under 24 hour observation that produced 19 bowel movements verified by GCI Medical Staff placing Defendants in a culpable state of mind in knowing plaintiffs physical limitations thereby discriminating against plaintiff in violation of the ADA and RA;

171. Predecessors warden Eppinger, HCA Hannah, ADA Coordinator Shepherd and Defendant's Douglas, Eddy, Wilson and Stanforth were and are aware of plaintiffs condition and needs but have failed to make the reasonable accommodation of a SMC that plaintiff once had for10 years, the accommodations provided are like having no accommodation at all in violation of 28 C.F.R. § 35.130(b)(7)(i), ADA and RA provisions;

XI.   CLAIMS   -- Part III -- DENIAL OF LATEST REASONABLE ACCOMMODATION
                              REQUEST FOR AN ADA SMC


THIRD CLAIM
172. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-171 as if fully rewritten herein;

173. Defendant's Keith Foley, M. O'Callahan, Janice Douglas Jennifer Barry, Kai Adams, Andrew Eddy, Roger Wilson and Karen Stanforth have all failed to make reasonable modifications to accomodate plaintiff with ADA SMC he once had in violation of 28 C.F.R.(b)(7)(i) the ADA and the RA;

174. Defendant's Keith Foley, M. O'Callahan, Janice Douglas, Jennifer Barry, Kai Adams, Andrew Eddy, Roger Wilson and Karen Stanforth did not provide plaintiff with a reasonable accommodation in violation of the ADA and RA;


XI. INJURIES
175. Plaintiff alleges that the acts and conduct of the Defendant's and their Predecessors herein giving rise to the 3 causes of action presented in this complaint include but are not limited to, physical, psychological, and emotional pain and suffering, trauma, humilation, ridicule, incontinence, stress and additional digestive and abdominal medical issues directly resulting from the infliction of additional and unecessary physical, psychological and emotional stress and trauma; as well as the deliberate discrimination in removing plaintiffs necessary and provided reasonable accommodation without authority to do so, and giving no redress to remedy the alleged wrongs; these acts and conduct of the defendants aforesaid further constitute direct violations of the ADA and RA. After being required to request a new reasonable accommodation, defednant's provided plaintiff with unreasonable accommodations that places plaintiff in the position of having no accommodation at all and in the state of privation;


XII. RELIEF
176. Declaration that plainiff is a qualified individual with a disability within the meaning of the ADA and or RA;

177. Declaratory judgment to establish plaintiffs rights and legal relations to the ADA and RA;

178. Declaratory judgment finding state officials, defendant's and their predecessors acted in accordance with offical state policies and are liable under 1983 for conduct and actions of removing plaintiffs ADA SMA depriving plaintiff of a provided and needed reasonable accommodation in violation of the ADA and RA;

179. Declaratory relief in the form of finding predecessor warden Eppinger deliberately indifferent to plaintiffs ADA SMC accommodation, discriminatory towards plaintiffs disability with his conduct and actions violating the ADA and RA;

180. Declaratory relief finding that defendant Douglas was deliberately indifferent to plaintiffs ADA needs in determining a SMC is not medically necessary without any type of examination, questioning, observation or evaluation in violation of the ADA and RA;

181. Declaratory relief finding that Defendants Eddy, Wilson and Stanforth allowed policies to exist that allowed arbitrary and capicious conduct and actions in assiting the removal of plaintiffs ADA SMC;

182. Declaratory relief finding Predecessors Eppinger and Shepherd and Defendants Foley, Adams, Barry, Eddy, Wilson and Stanforth breached duty to reasonable accommodate when they discriminated against plaintiff by not proviing a reasonable accommodation to the known permanent impact of plaintiffs physical limitations with no forseeable recovery in the future violating the ADA and or RA provisions against discrimination;

183. Declaration that plaintiffs current accommodations are not reasonable pursuant to the ADA and RA and therefore showing disability discrimination;

184. Declaratory relief in the form of a declaration that the acts and conduct of the defendant's and their predecessors aforesaid constituted violations of Title II of The Americans with Disability Act, Section 504 of the Rehabilitation Act of 1973, and plaintiff was injured and damaged thereby;

185. Declaratory relief finding Defendants Eddy, Wilson Stanforth and Douglas deliberately indifferent to plaintiffs ADA needs after 24 hour observation that put them on notice of plaintiffs continued toilet needs violating the ADA and RA;

186 Perpetual Injunction enjoining Defendants from enforcing policies mentioned herein. Also to seise further acts of discrimination ending ongoin violations of federal law of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973;

187. Perpetual Injuctive relief and Declaratory relief compelling Defendant's Keith Foley, M. O'Callahan, Janice Douglas, Jennifer Barry, Kai Adams, Andrew Eddy, Roger Wilson and Karen Stanforth to comply with Federal Law;

188 Reparative Injunction requiring that Defendants herein provide and restore plaintiffs ADA SMC reasonable accommodation as required by his disability;

189. Court order for reasonable attorney fees, recovery of plaintiffs costs and reasonable litigation expenses in the proseution of this action;

XII. EXHAUSTION OF STATE REMEDIES -- Part I -- Removing ADA SMC
                                              Accommodation

190. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-189 of this complaint as if fully rewritten herein

191. The events giving rise to all the plaintiffs claims arose while he was confined at Grafton Correctional Institution (GCI), Lorain County, Ohio

A. INFORMAL COMPLAINT PROCESS
192. 12/2/18 Plaintiff filed an Informal Complaint (GCI 1218000034);

193. Answered 12/5/18 by Deputy Warden Reynolds basically stating that I have a right to appeal;

194. 12/5/18 Plaintiff escalated the informal complaint into a grievance;

195. 12/10 Captain Brownlee found that general questions need to be addressed in a kite;

196. 12/20/18 Plaintiff appealed the grievance;

197. 2/7/19 Karen Stanforth closed inmate form. Affirmed;

198. Ten months later Karen Stanforth who closed (GCI1218000034) provided an answer in her comments using Medical Protocol B-19;


B. DIRECT GRIEVANCE PROCESS

199. There is a prisoner grievance procedure at GCI where Plaintiffs claims arose;

200. 12/3/18 Plaintiff filed a direct grievance against predecessor warden Eppinger (GCI1218000059) alleging deliberate indifference to his ADA SMC Accommodation;

201. 5/16/19 Defendant Roger Wilson answered the direct grievance finding that the requirement to show the warden was personally and knowingly involved in a violation of the law, rule or policy, or personally and knowingly approved or condoned such a violation has not been met;

202. There is no appeal of a direct grievance, the chief inspectors adjudication of the claims raised is the final say in the matter;

203. Plaintiff attempted to appeal Predecessors Eppinger and the GCI ADA Committees determination that A SMC is not medically necessary as both Eppinger and The deputy Warden stated I had a right to appeal;

204. 12/19/18 plaintiffs appeal was time stamped 12/19/19 then returned to plaintiff via Ms. R. Ware because their was no 4267 form generated or included;

-26-

XIII. EXHAUSTION OF ADMINSTRATIVE REMEDIES -  Part II -- Denial of New
                                                         Reasonable
                                                         Accommodation
                                                         Request for ADA SMC

205. 8/25/19 Plaintiff placed in the U.S. Mail Service his Appeal to Defendant
Roger Wilson and the Special Needs Assessment Committee;

206. 10/14/19 Plaintiff sent a certified letter to the Special Needs
Assessment Committee and ADA Coordinator for Inmates inquring about his
appeal;

207. 12/10/19 Defendant Roger Wilson and The Special Needs Assessment
Committee denied Plaintiffs appeal;

208. 1/21/20 Plaintiff received Defendant Roger Wilsons denial via Jpay kiosk.
A hard copy was received via U.S. Mail Service on 1/23/20;

209. 3/23/20 Plaintiff received a letter dated 3/16/19 from the Department of
Justice - Complaint No. 19-OCR-0851 - Administrative closure of complaint.
They stated: You may file a new complaint or raise concerns to other agencies
or file in a court;

XIV. EXHAUSTION OF ADMINISTRATIVE REMEDIES - Part III  Denial of Latest
                                                        Reasonable Accommodation
                                                        Request For a ADA SMC

210. Plaintiff filed an appeal on 1/18/22;

211. Roger Wilson, Chair, Special Needs Committee affirmed the decision of the
Warden on 3/21/22;

XV. PREVIOUS LAWSUITS

212. To the best of plaintiffs knowledge he has not had a case dismissed on
the three strikes rule, for being frivolous, malicious or that it failed to
state a claim upon which relief may be granted;

213. Plaintiff has not filed other lawsuits in state or federal court dealing
with the same facts involved in this action;

214. Plaintiff did file in state court seeking declaratory judgment and for
injunctive relief relating to the State of Ohio Parole Board guidelines
exceeding statutory minimum eligibility sentencing dates. A Separation of
Powers claim denying meaningful consideration for parole.

A.) Parties to the previous lawsuit
    Plaintiff Terry Larson
    Defendant Ohio Adult Parole Authority (OAPA)

Court - Franklin County Common Pleas, Ohio
C.) Case No. 04CV-12354
D.) Judge David E. Cain
E.) Date of Filing - November 23, 2004
F.) Date of Disposition - January 19, 2006

Result of Case: Summary Judgment For OAPA December 30, 2005


215. The Case was appealed to the Tenth District Court of Appeals:

A.) Case No. 06AP-80
B.) Date Filed Time era of February/March 2006
C.) Date of Disposition October 19, 2006
D.) Judges: J. Sadler (opinion), Petree and McGrath, concur

    Result of Case: Judgment Affirmed


216. Plaintiff was also a plaintiff in another State Declaratory Judgment and
Injunctive Relief case to enjoin the Ohio Adult Parole Board from using
Administrative Code 5120:1-1-07(A)(1) and (2) and 105-PBD-03 in future
hearings.

(A) Parties to previous lawsuit
    Plaintiffs Carl A. Nelson, Terry L. Larson and Paul Nelson
     Defendant Gary Mohr, Director of ODRC, et. al.
C.) Court - Franklin County Common Pleas Court, Ohio
D.) Judge David E. Cain
E.) Date of Filing - December 14, 2011
F.) Date of Disposition - March 22, 2013

Result of Case: January 29, 2013 the trial court denied appellant's Motion for
Summary Judgment and Granted Appellee's Motion For Summary Judgment


217. The case was appealed to the Tenth District Court of Appeals:

A.) Case No. 13AP-130
B.) Date Filed: Time era of April/May 2013
C.) Disposition Rendered on October 10, 2013
D.) Judges: J. Brown (opinion), P.J. Klatt and J. Sadler concur

Result of Case: Franklin County Common Pleas Court Judgment Affirmed

XVI. DEMAND FOR JURY TRIAL

218. Plaintiff hereby demands a trial by jury on all issues so triable as presented herein;


XVII. CERTIFICATION AND CLOSING

219. Under Federal Rule of Civil Procedure 11, by signing below, I the plaintiff in this matter certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litiagtion; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contents have evidentary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11;

220. I, the plaintiff agree to provide the Clerk's office with any changes to my address where case related papers may be served. I, the plaintiff understand that my failure to keep a current address on file with the Clerk's office may result in the dismissal of my case.


Date of Signature:  _August 10, 2022_


_Terry L. Larson_

(28 USC § 1746)

Terry L. Larson #243147
Plaintiff in pro se
Grafton Correctional Institution
2500 South Avon-Belden Road
Grafton, Ohio 44044

Certificate of Service

Plaintiff declares that he has sent a true and accurate copy of the foregoing
Amended Complaint by regular first class U.S. Mail Service, postage prepaid to
the Office of the Ohio Attorney General, care of Mindy Ann Worly, Criminal
Justice Section, 30 East Broad Street, 23rd floor, Columbus, Ohio 43215 this
12th day of August, 2022.


*Terry L. Larson*

Terry L. Larson, in pro se
#243147

## **APPENDIX**

Informal Complaint -- Grievance -- Appeal - Information Used For Determination That ADA SMC is Not Necessary and Kite Issues In Removing ADA SMC

Direct Grievance against Predecessor Warden Eppinger - Deliberate Indifference To ADA SMC and Conflicts with Cellmates Issues.

Cover Page of returned Appeal - Time Stamped 12/19/18 By the Chief Inspectors Office/ADA Coordinator For Inmates. All Issues Regarding Predecessor Defendant's and Claims In Removing ADA SMC.

Disposition -- Appeal Denied in New Reasonable Accommodation Request for ADA SMC from Defendant Roger Wilson and The Special Needs Assessment Committee.

Disposition -- Appeal Denied in Latest Reasonable Accommodation Request For ADA SMC From Roger Wilson, Chair, Special Needs Assessment Committee.

Two Declarations -- Concerning Access to the Handicapped Restroom located in Unit A2 at Grafton Correctional Institution.

Page: 1

| Ref# GCI1218000034 | Housing:A40310B | Date Created:12/02/2018 |
| ID#: A243147 | Name:LARSON,TERRY | |
| Form:Appeal | Subject:Health Care | Description:Health Care |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form
*12/2/2018 5:31:14 PM : ( a243147 ) wrote*
Courts require that I exhaust all my administrative remedies.
I am a qualified individual with a disability within the meaning if the ADA and section 504.
I have reason to believe that Dr. Douglas and the ADA committee used inaccurate information to make the determination that a single cell is not medically necessary. Health Care Administrator, Mr. Hannah on 11/20/18 allegedly made the comment that Larson has 15-20 bowel movements only on his bad days. I realize that frequency and urgency are not the only factors, but there very pertinent ones.
I sent kites to both Mr. Hannah and Dr. Douglas on 11/21/18 concerning this issue and have not received a response from either.
To resolve this complaint would be verification from GCI medical (Dr. Douglas and the ADA Committee) that they used all accurate information in formulating their decision. Particularly the number of daily B.M. they perceived and considered?
Terry Larson #243147

Communications / Case Actions
*12/2/2018 5:31:14 PM : ( a243147 ) wrote*
Form has been submitted

*12/5/2018 8:27:24 AM : ( Stephen Reynolds ) wrote*
The Warden sent you a response to your ADA request for a single cell on November 16th, 2018. The ADA Committee determined that a single cell was not medically necessary, however you will continue to have access to handicap facilities within your unit. Per policy 64-DCM-02, you may appeal this decision to the Operations Support Center ADA Coordinator.

*12/5/2018 8:27:29 AM : ( Stephen Reynolds ) wrote*
Closed inmate form

*12/5/2018 1:23:34 PM : ( a243147 ) wrote*
Escalated to Grievance

*12/5/2018 1:23:34 PM : ( a243147 ) wrote*
The informal complaint did not resolve the issue.
The question is did dr, douglas and the ada committee use inaccurate information to make the determination that a single cell is not medically necessary. I'm looking for the number of daily bowel movements dr. Doug;as and the ada committe perceive and considered in making their decision that a single man cell is not medically necessary?
Moreover, I've had a single man cell for 10 years and did not request one, only requested that warden Eppinger to abide by the ada single man cell accommodation by Mr. Gary Croft ADA corrdinator for ODRC inmates and the special needs assessement committee, as the four previous wardens.
On or about 9-12-18 dr. douglas and I went over a detailed account of my condition in typing up a physician approval for 2.5% hydrocortisone cream. So I do not understand how she could make such a determination?

*12/10/2018 8:17:10 AM : ( Lloyd Brownlee ) wrote*
You have used the grievance procedure to address an issue that is not surrounding a policy/procedure violation as described in Administrative Rule
5120-9-31. Questions or statements need to be addressed in the form of a Kite.

General items are required to be addressed in the form of a Kite and processed through the Institutional Mail process. You will need to begin again using the Kite System.
Please note that if you do not agree with the decision that has been given there is an appeal mechanism that is in place. Your Grievance is denied. This ends Ref# GCI-1218000034.

*12/10/2018 8:17:23 AM : ( Lloyd Brownlee ) wrote*
Closed inmate form - Disposition: Denied

*12/20/2018 12:32:48 PM : ( a243147 ) wrote*
Escalated to Appeal

| Ref# GCI1218000034 | Housing:A40310B | Date Created:12/02/2018 |

*12/20/2018 12:32:48 PM : ( a243147 ) wrote*
In my informal complaint I stated I had sent kites to both HCA Mr. Hannah and Dr. douglas requesting information used to determine that a single man cell was not medically necessary. I also stated that both kites went unanswered.
In my grievance I restated the question presented in the kites. I was not asking a question for the first time in the grievance procedure but grieving that kites go unaswered from medical so how can I adequately and properly defend my position?
I received my kite that I sent to Mr. Hannah on 12/10/18 where it stated please sign up for nurses sick call to possibly be seen by the doctor.
The kite was not signed or dated, and therefore may not have been answered by Mr. Hannah but someone else.
Kites at GCI need to be answered within seven (7) days, signed and dated.

*1/8/2019 10:38:36 AM : ( Marc Bratton } wrote*
The office of the Chief Inspector is in receipt of your informal complaint, disposition of grievance and your appeal to this office. The subject and description of your appeal has been redirected to Health Care Services for analysis and final decision.

*2/7/2019 3:37:01 PM : ( karen stanforth ) wrote*
Closed inmate form - Disposition: Affirmed with comments

*12/2/2019 12:49:19 PM : ( karen stanforth ) wrote*
Re-Opened inmate form

*12/2/2019 1:28:46 PM : ( karen stanforth ) wrote*
Affirmed.
It appears your case was closed by this Assistant Chief Inspector by mistake and therefore I want to provide you an answer to your appeal so that you have a formal response to your stated issues.
Your medical file indicates you have a history of COPD, Hyperlipidemia, Hypertension, Non-Insulin Dependent Diabetes and Colorectal Cancer and you were seen in DSC by Dr. Douglas on 11/2/18 for a BB request, reporting you have a history of an old leg injury with surgical repair. During this appointment you also requested approval to use the handicapped restroom due to periods where you experience frequent bowel movements.
Dr. Douglas approved a BBR for you however she did not identify that you required an exclusive order for the use of a handicapped restroom at the time. Please keep in mind, there are special correctional facilities for offenders who cannot function within the general population due to bladder and bowel issues. At the time you saw Dr. Douglas in 2018, you were not identified as having a need for an institution with special ADA accommodations.
To ensure your bowel condition is being managed appropriately, I reviewed the remainder of your medical file for 2018 and 2019 up to your last visit and have found that during your CCC visits on 7/25/19 and 9/30/19 you verbalized no complaints related to your bowel function and you also had no sick call visits. If your condition changes and would like to seek further information about the institutions which offer special accommodations I encourage you to submit a HSR.
In closing, the GCI medical staff have followed the ODRC guidelines set forth in 68-MED-01 and Medical Protocol B-19. There were no indications you have experienced deliberate indifference or negligence concerning your specific treatment plan guidelines. Therefore, there will be no further action concerning this appeal at this time.
Karen Stanforth, Assistant Chief Inspector, Medical

*12/2/2019 1:29:32 PM : ( karen stanforth ) wrote*
Closed inmate form - Disposition: Affirmed with comments

| Ref# GCI1218000059 | Housing:A40310B | Date Created:12/03/2018 |
| ID#: A243147 | Name:LARSON,TERRY | |
| Form:Grievance Against the Warden | Subject:Warden | Description:Violation of Statute |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form

*12/3/2018 1:55:51 PM : ( a243147 ) wrote*

Courts require that I exhaust all my administrative remedies. I have a disability and I'm a qualified individual within the meaning of the ADa and section 504.

Warden Eppinger has shown deliberate indifference to my ADA single man cell accomodation provided through and by Mr. Gary Croft., ADA Coordinator for ODRC inmates and the special needs assistant committee (Exhibit A) Nothing has changed with the complications I experience as a direct result of a lower interior resection surgery provided by ODRC and OSU. My condition has not improved, so my accomodation shouldn't change either.

It has been documented that problems with cellies have occured previously over the number of daily bowel movements I experience. Dorm style housing is incompatible because of the frequency and urgency of the B.M. and having meaningful access.

I received a paper from Warden Eppinger on 11-20-18 in a kite I sent him. This paper states the chief medical officer and the ADA committe determined that a single cell is not medically necessary. (Exhibit B) This is under informal complaint resolution as to the accuracy of the information used. Warden Eppinger sits on the ADA committee and also has the final word on making these decisions as the managing officer. This certainly seems to be a conflict of interest.

The ADA single man cell accomodation has been granted and should be followed.

Both exhibits have been ssent in a kite to GCCI Institutional Inspector, Ms. Ware and requested to be attached to this document.

Communications / Case Actions

*12/3/2018 1:55:51 PM : ( a243147 ) wrote*
Form has been submitted

*1/10/2019 3:55:18 PM : ( Candace Henry ) wrote*
Please be advised that additional time will be required before a decision can be made concerning your Direct Grievance. This extension is needed by the writer in order to affect a fair and proper resolution.

*5/6/2019 11:21:10 AM : ( Roger Wilson ) wrote*
Upon review of your complaint and administrative rule 5120-9-31 and 64-DCM-02, I find the requirement to show the warden was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation has not been met. The inmate grievance procedure will not serve as an additional or substitute appeal process for hearing officer decisions, rules infraction board decisions or those issues or actions which already include an appeal mechanism beyond the institutional level. Therefore, the grievance against the warden is denied.

*5/6/2019 11:21:18 AM : ( Roger Wilson ) wrote*
Closed inmate form - Disposition: Denied

OHIO ................

2018 DEC 19 AM 10: 12

12/12/18

To: Special Needs Assessment Committee
    c/o: operation Support Center
        ADA coordinator for inmates


To whom it may Concern,

on 11/27/18 I sent GCI ADA coordinator a Kite
requesting an Appeal form for the Special Needs
Assessment Committee and the ADA coordinator for ODRC.
The Kite was returned to me asking: "What is the Special
Need? on 12/11/18 (Copy attached)


Time being of the essence, I prepared the Appeal and
Exhibits. Please find enclosed.


Terry Larson

Terry Larson #243147
Grafton Correctional Inst.
2500 S. Avon-Belden Rd.
Grafton, Ohio. 44044

rud
form 4267
attached to
document

 **Ohio** | **Department of Rehabilitation & Correction**

Mike DeWine, Governor
Annette Chambers-Smith, Director

December 13, 2019

Terry L. Larson A243147
Grafton Correctional Institution

Dear Mr. Larson:

On December 10, 2019, the Special Needs Assessment Committee met to review your ADA accommodation appeal regarding being denied for a single cell assignment. The committee is aware that you were granted a single cell assignment some years ago. However, each request for a reasonable accommodation is fact specific, and is considered on its own merits. The denial signed by the warden on July 19, 2019 noted the chief medical officer at GCI determined there was no medical necessity requiring you to have a single cell. Similarly, this committee sees no evidence to support the requirement for a single cell. This committee believes the current accommodation of a celled environment with access to handicapped restrooms is appropriate.

Therefore, the decision of the Warden is affirmed. No further action will be taken by the committee.

Respectfully,

*Roger W Wilson*

Roger Wilson
Special Needs Assessment Committee

4545 Fisher Road, Suite D
Columbus, Ohio 43228
www.drc.ohio.gov

United States
**Census 2020** | **BE COUNTED** ☑ **Ohio**
It's easy, safe and important.
Census.Ohio.Gov

# Ohio | Department of Rehabilitation & Correction

**Mike DeWine, Governor**
**Annette Chambers-Smith, Director**

Date: March 21, 2022

From: Roger Wilson, Chair, Special Needs Assessment Committee *Roger Wilson*

To: Terry Larson 243147

RE: Inmate Reasonable Accommodation Appeal

Dear Mr. Larson:

The Special Needs Assessment Committee is in receipt of your appeal of your Inmate Reasonable Accommodation dated 1/18/22 requesting a single cell housing assignment. The Committee has reviewed your appeal and supporting documentation, in addition to the decision of the Institutional ADA Coordinator and the Warden. The Committee conducted follow up communication with your institutional inspector, Adams, who confirmed with the Unit Managers to ensure that special needs individuals have free access to the handicapped restroom. Therefore, the decision of the Warden is AFFIRMED and your request for appeal is denied. This Committee will take no further action on this matter.

DECLARATION MADE UNDER 28 USCA § 1746

I declare under the penalty of perjury that the foregoing
statements are true and correct:

1.) I, Gavon Ramsay am currently incarcerated in the State of
Ohio and reside at Grafton Correctional Institution.

2.) I was recently the roommate of Mr. Larson in housing unit A-
2 and have personally witnessed the excessive amount of times he
must use the restroom daily.

3.) Our handicapped restroom is designated as such, and
recognized as such by the recently posted sign, yet it is
utilized by anyone housed in A-2, thus limiting usage to those
that are approved to use it.

4.) The handicapped restroom is not always readily available, nor
is a corrections officer always available to unlock the door to
it.

5.) I have personally witnessed Mr. Larson come out of his cell
to use the handicapped restroom but was unable to because it was
unavailable.

6.) I have also witnessed Mr. Larson come out of his cell to use
the handicapped restroom but was made to wait in excess of 10
minutes for an officer to come the short distance to unlock the
door to let him in.

_____                    A760295
Signature                                    Inmate Number


Executed on: May 4, 2022

28 USCA § 1746(2)

DECLARTION UNDER 28 USCA § 1746

I declare under the penalty of perjury that the forth coming statements are true and correct:

1.) Currently I am incarcerated in the State of Ohio and reside at Grafton Correctional Institution;

2.) My housing assignment is located in A-2;

3.) Our handicapped restroom is utilized by anyone housed in A-2 regardless of the posted sign designating it for handicapped only;

4.) The handicapped restroom in A-2 is not always accessible;

5.) I have witnessed Mr. Larson come out of his cell to use the handicapped restroom and was unable too because it was in use.

_____                    _____
Signature                                     Inmate Number

Executed on: 7-10-22

28 USCA § 1746(2)